[Civ. No. 64574. Second Dist., Div. Seven. May 25, 1983.]

DANA RENEE JOHNSON et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Perona & Langer, Ronald Beck and Wayne M. Robertshaw for Plaintiffs and Appellants.

Clifford E. Clarke, Horvitz & Greines, Ellis J. Horvitz, Kent L. Richland, Marilyn L. Hoffman and Alan G. Martin for Defendants and Respondents.

**OPINION**

**SCHAUER, P. J.**—In this wrongful death action arising out of the suicide of Michael James Johnson (Decedent), appellants Dana Renee Johnson (Wife) and

Mindy Lyn Johnson (through her guardian ad litem), the wife and daughter, respectively, of Decedent (Wife and Mindy Lyn Johnson collectively Appellants), sued the County of Los Angeles (County) and sheriff's officers employed by the County (Sheriffs) (County and Sheriffs collectively Respondents). This case involves the detention of an obviously suicidal schizophrenic by law enforcement officials who assured his wife that he would be cared for in a custodial setting and then released him. He promptly committed suicide.

Appellants' complaint alleges violation of duties on the part of Respondents to (1) confine, (2) medicate and (3) summon medical care for Decedent. Additionally, Appellants raise a major issue as to a fourth duty of Respondents—to warn Appellants of Decedent's release from custody. Respondents, relying upon the legal defense of sovereign immunity, demurred to the complaint pursuant to section 430.10 of the Code of Civil Procedure, on the ground that it failed to state facts sufficient to state a cause of action against them. The trial court sustained the demurrer without leave to amend, and appellants appeal from the court's order dismissing the complaint. Because the actions and inaction by government officials here were part of the statutorily immunized processes of commitment and treatment of a mentally ill person, we hold that no cause of action can be stated under the applicable immunity statutes with regard to the duties to confine and medicate. But we also hold that Appellants are able to allege causes of action for violation of the duties to summon medical care for a prisoner and to warn of an impending release from custody, and we reverse.

## I. The Facts and Procedural History

As alleged in the complaint, the facts which underlie the legal issues posed in this matter are as follows: on May 2, 1980, Decedent, who was driving on the wrong side of the freeway, was arrested by Sheriffs. Upon his arrest, Decedent informed Sheriffs that he was attempting to commit suicide and that "people" were trying to torture him and kill him, and pleaded that Sheriffs kill him. Decedent was charged with assault with a deadly weapon and taken into custody. Shortly thereafter, Wife informed Sheriffs that Decedent was a paranoid schizophrenic, had been repeatedly hospitalized, and required immediate medication (thorazine) to correct a chemical imbalance which created Decedent's aberrant conduct. Wife further informed Sheriffs that Decedent had suicidal tendencies requiring immediate medical attention, and should not be released. Sheriffs acknowledged that Decedent required medical attention, promised to hospitalize and medicate him, and advised Wife not to worry or interfere. On May 5, 1980, Decedent was released from Los Angeles County jail without notice to Appellants, and on May 7 he committed suicide.

Appellants' complaint contains two causes of action. In the first cause of action, Appellants allege that Sheriffs acknowledged that Decedent required hospitalization and medication; that Sheriffs promised to hospitalize and

medicate Decedent; that in reliance on such promises Appellants refrained from securing medical attention for Decedent; that Sheriffs "breached their duty to care for and seek medical attention for decedent, by negligently and carelessly releasing decedent out of its custody and/or control, without sending decedent to a hospital, without providing decedent with the necessary medication they knew he needed, and without informing plaintiff that decedent was released"; and that Decedent's suicide was the proximate result of such negligence. The second cause of action incorporates the allegations of the first cause of action, alleges that Respondents breached their statutory duty of care to Decedent pursuant to Government Code section 845.6[1] by failing to furnish or obtain medical care for Decedent when they knew, or had reason to know, that Decedent was in need of immediate medical care, and avers that Decedent's suicide was the proximate result of that breach.

In response, Respondents assert that absolute immunity for their failure to confine and medicate Decedent is afforded by Government Code sections 855.8[2] and 856.[3] [4] In addition, Respondents assert that those sections also pro-

[1]Government Code section 845.6 provides, in relevant part: "Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care."

[2]Government Code section 855.8 provides:

"(a) *Neither a public entity nor a public employee acting within the scope of his employment is liable for injury resulting* from diagnosing or failing to diagnose that a person is afflicted with mental illness or addiction or *from failing to prescribe for mental illness or addiction.*

"(b) A public employee acting within the scope of his employment is not liable for administering with due care the treatment prescribed for mental illness or addiction.

"(c) Nothing in this section exonerates a public employee who has undertaken to prescribe for mental illness or addiction from liability for injury proximately caused by his negligence or by his wrongful act in so prescribing.

"(d) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission in administering any treatment prescribed for mental illness or addiction." (Italics supplied.)

[3]Government Code section 856 provides:

"(a) *Neither a public entity nor a public employee acting within the scope of his employment is liable for any injury resulting from determining in accordance with any applicable enactment*:

"(1) *Whether to confine a person for mental illness or addiction.*

"(2) The terms and conditions of confinement for mental illness or addiction.

"(3) Whether to parole, grant a leave of absence to, or release a person confined for mental illness or addiction.

"(b) A public employee is not liable for carrying out with due care a determination described in subdivision (a).

"(c) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission in carrying out or failing to carry out:

"(1) A determination to confine or not to confine a person for mental illness or addiction.

"(2) The terms or conditions of confinement of a person for mental illness or addiction.

"(3) A determination to parole, grant a leave of absence to, or release a person confined for mental illness or addiction." (Italics supplied.)

[4]Although by their demurrer Respondents asserted that they were also shielded from liability

vide immunity for their failure to summon medical care for Decedent. The trial court sustained Respondents' demurrer without leave to amend.

■ "The function of a demurrer is to test the sufficiency of plaintiffs' pleading by raising questions of law. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 796, pp. 2408-2409.)" (*Buford* v. *State of California* (1980) 104 Cal.App.3d 811, 818 [164 Cal.Rptr. 264].) ■ Leave to amend is properly denied when the facts are not in dispute, the nature of the claim is clear but there is no liability under substantive law. (*Sackett* v. *Wyatt* (1973) 32 Cal.App.3d 592, 603 [108 Cal.Rptr. 219].) ■ "Unless it is clear that a complaint does not state a cause of action and cannot be so amended as to obviate the objections thereto it is error to refuse permission to amend. [Citations.]" (*Hillman* v. *Hillman Land Co.* (1947) 81 Cal.App.2d 174, 181 [183 P.2d 730].) "[U]nless [the complaint] shows on its face that it is incapable of amendment, denial of leave to amend [constitutes] an abuse of discretion, [citations] irrespective of whether leave to amend is requested or not. (Code Civ. Proc., § 472c.)" (*King* v. *Mortimer* (1948) 83 Cal.App.2d 153 [188 P.2d 502].) " 'Liberality in permitting amendment is the rule, not only where a complaint is defective as to form but also where it is deficient in substance, if a fair prior opportunity to correct the substantive defect has not been given. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 845; . . .' (*Greenberg* v. *Equitable Life Assur. Society* (1973) 34 Cal.App.3d 994, 998 [110 Cal.Rptr. 470].)" (*Cordonier* v. *Central Shopping Plaza Associates* (1978) 82 Cal.App.3d 991, 999 [147 Cal.Rptr. 558].) However, the burden is on the plaintiff to demonstrate that the trial court abused its discretion (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737]; *Filice* v. *Boccardo* (1962) 210 Cal.App.2d 843, 847 [26 Cal.Rptr. 789]), by showing in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. (*Goodman* v. *Kennedy, supra,* 18 Cal.3d at p. 349; *Saint* v. *Saint* (1932) 120 Cal.App. 15, 23-24 [7 P.2d 374].) ■ "[I]t will be held an abuse of discretion to sustain without leave to amend a demurrer where the complaint is not fundamentally deficient in alleging facts showing a right to some relief which can properly be given, but is only defective with respect to the manner or form in which the facts warranting relief have been pleaded. (*Washer* v. *Bank of America,* 21 Cal.2d 822 [136 P.2d 297, 155 A.L.R. 1338]; *Wennerholm* v. *Stanford Univ. Sch. of Med.,* 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358]; *Duffy* v. *Duffy,* 82 Cal.App.2d 203 [186 P.2d 61].)" (*Katz* v. *Driscoll* (1948) 86 Cal.App.2d 313, 316 [194 P.2d 822].) ■ On appeal the court is not concerned with a plaintiff's possible difficulty or inability in proving the allegations of the complaint. (*Highlanders, Inc.* v. *Olsan* (1978) 77 Cal.App.3d 690, 697 [143 Cal.Rptr. 679].)

---

by Government Code section 856.4 (failure to admit to medical facility), they have abandoned that contention on this appeal.

With these standards in mind, we examine whether Appellants did or could state a cause of action against Respondents.

## II. Appellants' First Count

A. *Duty to Warn Appellants of the Impending Release of Decedent*

*Respondents had a duty of care in the absence of immunity.*

We must first consider whether Respondents owe a duty of care to Appellants in the absence of immunity barriers, as "[c]onceptually, the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity." (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-202 [185 Cal.Rptr. 252, 649 P.2d 894].)

Appellants' first cause of action alleges, inter alia, that Respondents "breached their duty to care for and seek medical attention for decedent, by negligently and carelessly releasing decedent . . . without informing plaintiff that decedent was released." Although the complaint is inartfully drafted, it discloses the basis for Appellants' cause of action and can be amended to clarify the allegations: since Respondents were aware of Decedent's suicidal tendencies, their failure *to warn Appellants of Decedent's impending release* constituted a breach of Respondents' duty *to exercise reasonable care to protect Decedent.* Accordingly, we turn to the question whether Respondents had such a duty to warn Appellants of Decedent's impending release.

■ It is a fundamental principle of tort law that one is liable for injuries caused by a failure to exercise reasonable care. Hence whenever a person is in such a position with regard to another that, if he did not use due care in his own conduct, he would cause injury or danger to another, a duty arises to use due care to avoid such danger. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) ■ Whether a "duty" exists in a particular case is a question of law. ■ "[L]egal duties are . . . merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done." (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 434 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) "Duty" is " 'an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts [3d ed.] at pp. 332-333.)" (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) ■ The most important policy consideration is the

foreseeability of the harm:[5] as a general principle a defendant owes a duty of care "to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous." (*Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 399 [115 Cal.Rptr. 765, 525 P.2d 669]; *Dillon* v. *Legg, supra,* 68 Cal.2d at p. 739.) ██ However, the common law, reluctant to impose liability for nonfeasance, generally does not impose a duty upon a defendant to control the conduct of another (*Richards* v. *Stanley* (1954) 43 Cal.2d 60, 65 [271 P.2d 23]; Rest.2d Torts (1965) § 315), or to warn of such conduct (Rest.2d Torts, *supra,* § 314, com. c; Prosser, Law of Torts (4th ed. 1971) § 56, p. 341), unless the defendant stands in some *special relationship* either to the person whose conduct needs to be controlled, or to the foreseeable victim of such conduct. (*Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d at p. 435; *Buford* v. *State of California, supra,* 104 Cal.App.3d at p. 819; Rest.2d Torts, *supra,* §§ 315-320.)

Bearing in mind the foregoing controlling principles, we look to the Supreme Court precedents to determine whether Respondents were in such a special relationship to either Decedent or Appellants and therefore had a duty to warn Appellants of the impending release of Decedent.

The California Supreme Court has considered the duty to warn owed by government officials in four cases: *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425, *Thompson* v. *County of Alameda, supra,* 27 Cal.3d 741, and *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197.

In *Johnson, supra,* 69 Cal.2d 782, the plaintiff sought damages against the state for personal injuries sustained when she was attacked by a minor placed in her foster home by the Youth Authority with no warning of the minor's known homicidal tendencies. The court held that the state owed a duty of care to the plaintiff. As the party placing the youth with the plaintiff, "the state's relationship to plaintiff was such that its duty extended to warning of latent, dangerous qualities suggested by the parolee's history or character. [Citations.] These

---

[5]Other considerations include "the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland* v. *Christian, supra,* 69 Cal.2d at p. 113.) And, "[w]hen public agencies are involved, additional elements include 'the extent of [the agency's] powers, the role imposed upon it by law and the limitations imposed upon it by budget; . . .' (*Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847]; see *Smith* v. *Alameda County Social Services Agency, supra,* 90 Cal.App.3d 929 [153 Cal.Rptr. 712].)" (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 750 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].)

cases impose a duty upon *those who create a foreseeable peril*, not readily discoverable by endangered persons, to warn them of such potential peril . . . [T]he state owed a duty to inform [the plaintiff] of any matter that its agents knew or should have known that might endanger the Johnson family . . . ." (*Johnson v. State of California, supra*, 69 Cal.2d at pp. 785-786; italics supplied.)

In *Tarasoff, supra*, 17 Cal.3d 425, the decedent was the subject of threats by an eventual assailant (Poddar) who had been treated by the defendant psychotherapists. The court held that the therapists, who heard the threats, had a duty to exercise due care to warn the "foreseeable victim of [the] danger" (*Tarasoff, supra*, 17 Cal.3d at p. 439) "or those who can reasonably be expected to notify [her] . . . ." (*Id.*, at p. 442.) The duty arose from the special relationship between a patient and his psychotherapist, generally recognized as supporting an affirmative duty for the benefit not only of the patient but of other persons as well. (*Id.*, at p. 442.) As the decedent was the known and *specifically foreseeable and identifiable victim* of Poddar's threats, the court imposed liability on the therapists for failing to take reasonable steps to protect her.

The *Tarasoff* court further held, however, that police defendants who had briefly detained and then released Poddar did not have a "special relationship" to either the victim or to Poddar sufficient to impose upon them a duty to warn of Poddar's threats.

In *Thompson, supra*, 27 Cal.3d 741, the county was sued for negligence in failing to warn the local police and parents of neighborhood children of the release of a juvenile offender who posed a threat to young children, and in failing to warn the offender's mother of his dangerous propensities. Basing its decision in part on policy considerations and in part upon an analysis of "foreseeability" within the context of the case, the court held that the county had no duty to warn the police, the neighborhood parents, or the offender's mother. The court distinguished *Tarasoff* and *Johnson,* explaining that in those cases "the potential victims were specifically known and designated individuals. The warnings which we therein required were directed at making those individuals aware of the danger to which they were uniquely exposed. The threatened targets were precise. In such cases, it is fair to conclude that warnings given discreetly and to a limited number of persons would have a greater effect because they would alert those particular targeted individuals of the possibility of a specific threat pointed at them. In contrast, the warnings sought by plaintiffs would of necessity have to be made to a broad segment of the population and would be only general in nature. In addition to the likelihood that such generalized warnings when frequently repeated would do little as a practical matter to stimulate increased safety measures . . . such extensive warnings would be difficult to give." (*Thompson* v. *County of Alameda, supra,*

27 Cal.3d at p. 755.) The court held that "public entities and employees have no affirmative duty to warn of the release of an inmate who has made *nonspecific threats of harm directed at nonspecific victims.*" (*Id.*, at p. 754; italics in original.)

In *Davidson, supra,* 32 Cal.3d 197, plaintiff was stabbed while in a public laundromat under surveillance by public officers for the purpose of preventing assaults and apprehending a man who had stabbed women on three earlier occasions at the same or a nearby laundromat. Aware of plaintiff's presence in the laundromat throughout the surveillance, the officers saw a man on the premises and, while watching him for fifteen minutes, identified him as the likely perpetrator of an assault which had occurred the prior evening. The officers did not warn plaintiff, who was eventually stabbed by the suspect.

The Supreme Court held that the officers did not have a duty of care based upon a "special relationship" between them and the potential assailant. The officers' "mere proximity to an assailant, even with knowledge of his assaultive tendencies or status as a felon, does not establish a relation imposing a duty to control the assailant's conduct." (*Davidson, supra,* 32 Cal.3d at p. 205.)

The court further held that although the plaintiff was a reasonably foreseeable victim, that factor alone did not suffice to establish a special relationship with the officers imposing upon them a duty to warn or protect. The court distinguished *Johnson, supra,* 69 Cal.2d 782, and *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82][6] as cases in which a special relationship was predicated upon a victim's *dependence* upon the police for protection. Although "a finding of special relationship does not require a promise or reliance thereon in order to impose a duty of care" (*Davidson, supra,* 32 Cal.3d at p. 207), in *Johnson* the state *placed* the victim in danger and hence it was "a straightforward case of liability based on failure to warn of a foreseeable peril created by the defendant and not readily discoverable by the potential victim. (Rest.2d Torts, § 321.)" (*Id.*, at p. 208.) In *Mann, supra,* 70 Cal.App.3d 773, "the police officer's conduct contributed to, increased, or changed the risk which would have otherwise existed. The officer stopped to provide assistance, lulling the injured parties into a false sense of security and perhaps preventing other assistance from being sought." (*Davidson, supra,* 32 Cal.3d at p. 208.) In *Davidson* the officers did not create the peril to the plaintiff; she was unaware of their presence and did not rely on them for protection; and their

---

[6]In *Mann,* a highway patrolman placed his patrol car with flashing lights behind two cars stalled on the freeway. After a tow truck arrived, the officer departed without warning or placing protective flares. Minutes later one of the stalled cars was sideswiped by a passing car and persons nearby were injured. Holding there was a special relationship imposing a duty to protect, the court reasoned that the injured party was dependent upon the officer who was an expert in traffic safety and the officer, having chosen to investigate and discovering their plight, had a duty to exercise reasonable care.

conduct did not change the risk which would have existed in their absence. The court found it inappropriate to impose a duty to warn the plaintiff on the basis of the officers' mere knowledge that she was a potential victim, as this would "necessarily impl[y] a general duty to warn other potential victims in the vicinity. (See *Thompson* v. *County of Alameda, supra,* 27 Cal.3d at p. 758.)" (*Ibid.*)

We conclude that Sheriffs here stood in a special relationship to Decedent and to Appellants, and had a duty to warn Appellants before releasing Decedent. As noted above, the courts have imposed affirmative duties in cases where the defendant governmental authority stands in some special relationship either to the person whose conduct needs to be controlled, or to the foreseeable victim of that conduct. The instant case is unique in that, since it involves a suicide, the person whose conduct needed to be controlled was also the foreseeable victim of that conduct. In light of the policy considerations underlying the imposition of affirmative duties, this singular setting does not undermine, but rather supports, the imposition of a duty: in the case of Decedent, Sheriffs stood in a special relationship *both* to the victim and to the person whose conduct created the danger. By releasing Decedent from custody without a prior warning to Appellants, Sheriffs placed Decedent in a position of clearly foreseeable danger. Decedent was not only a foreseeable target of the danger —he was the specific and identified potential victim. Decedent had made a *specific threat of harm* directed at a *specific victim*—himself. As stated by the California Supreme Court in *Thompson,* "for policy reasons the duty to warn depends upon and arises from the existence of a prior threat to a specific identifiable victim. (Cf. *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938 [41 Cal.Rptr. 508].) In those instances in which the released offender poses a predictable threat of harm to a named or readily identifiable victim or group of victims who can be effectively warned of the danger, a releasing agent may well be liable for failure to warn such persons." (*Thompson* v. *County of Alameda, supra,* 27 Cal.3d at p. 758.) The fact that the warning in the case at bar should have been given to Appellants (and not to the immediate "victim" of the suicide) does not foreclose plaintiffs. As wife and child of their non compos mentis loved one, Appellants are the real and foreseeable "victims" of this tragedy, and entitled to maintain a wrongful death action. (Cf. *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425.) Moreover, Appellants could have been notified without appreciable burden to Sheriffs upon whom they depended for "protection" against the very eventuality that occurred. (Cf. *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197.) And Sheriffs gave Appellants assurances and instructions not to interfere, thereby increasing (if not creating) the risk of suicide upon the unexpected and unsupervised release of Decedent. (Cf. *Johnson* v. *State of California, supra,* 69 Cal.2d 782.) Thus, Appellants have sufficiently established as a matter of law that a special relationship existed between Sheriffs and Decedent and Sheriffs

and Appellants so as to invoke a duty, in the absence of immunity statutes, to warn Appellants about Decedent's impending release.

*Respondents are not immune from liability for failing to warn Appellants of the impending release of Decedent.*

We now address the question whether Respondents were immunized from liability, under pertinent sections of the Government Code, for failing to warn Appellants before releasing Decedent.

No specific statutory provision shields Respondents from liability based upon failure to warn Appellants of the impending release of Decedent. Accordingly, we postulate our analysis on section 820.2 of the Government Code, which provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."[7]

In *Johnson, supra,* 69 Cal.2d 782, our Supreme Court authoritatively construed section 820.2, and made a comprehensive analysis of the "discretionary acts" which are clothed with immunity under that section. Noting that virtually every public act admits of some element of discretion, the court articulated the distinction between "discretionary" (immunized), and "ministerial" (nonimmunized), acts. The court rejected a purely mechanical analysis of the term "discretionary," holding that section 820.2 affords immunity only for "basic policy decisions." (*Johnson, supra,* 69 Cal.2d at p. 793; see also *Elton* v. *County of Orange* (1970) 3 Cal.App.3d 1053, 1057-1058 [84 Cal.Rptr. 27]; *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698 [141 Cal.Rptr. 189]; *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d at p. 445; Comment, *California Tort Claims Act: Discretionary Immunity* (1966) 39 So.Cal.L.Rev. 470, 471.) The court set forth several of the policy considerations relevant to the governmental claim of immunity. Citing *Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, at page 230 [11 Cal.Rptr. 97, 359 P.2d 465],[8] the court stated: " 'Although it may not be possible to set forth a definitive rule which would determine in every instance

---

[7]Section 815.2 of the Government Code declares that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." The section further provides, with exceptions not applicable here, that "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." County, therefore, is immune from liability only if Sheriffs are immune.

[8]Although *Lipman* predates the California Tort Claims Act, the Senate Committee on Judiciary comment to section 820 states: "This section restates the pre-existing California law," citing *Lipman,* inter alia. (Sen. J. (Apr. 24, 1963) p. 1889.)

whether a governmental agency is liable for discretionary acts of its officials, various factors furnish a means of deciding whether the agency in a particular case should have immunity, such as the importance to the public of the function involved, the extent to which governmental liability might impair free exercise of the function, and the availability to individuals affected of remedies other than tort suits for damages.'" (*Johnson, supra,* 69 Cal.2d at p. 789.) The *Johnson* court made it clear that once the basic policy decision has been made, the role of immunity ends.[9]

*Johnson* held that a parole officer's failure to warn a couple that their prospective foster child had homicidal tendencies presented no reasons for immunity, as the "determination [whether to warn was] at the lowest, ministerial rung of official action." (*Johnson, supra,* 69 Cal.2d at p. 796.)

██ Relying on *Johnson,* we conclude that respondent Sheriffs' failure to warn Appellants of the impending release of Decedent presents no reason for immunity pursuant to Government Code section 820.2. Sheriffs' failure to warn Appellants of a clearly foreseeable danger failed to rise to the level of governmental decisions calling for immunization.

There exists an additional reason why section 820.2 fails to justify the trial court's order dismissing the complaint. In *Johnson,* the Supreme Court also held that a public agency must demonstrate that its employee in fact consciously exercised discretion in connection with the negligent acts or omissions charged in order to invoke the "discretionary acts" immunity provisions of Government Code section 820.2. "[T]o be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." (*Johnson, supra,* 69 Cal.2d at pp. 794-795, fn. 8.) Such a showing

---

[9]The *Johnson* court also cited a long line of federal cases under the Federal Tort Claims Act (28 U.S.C. §§ 1291, 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412, 2671 et seq.) in support of its analysis: "*United States* v. *Washington* (9th Cir. 1965) 351 F.2d 913, 916 (decision as to where to place wire across canyon was assumed to be discretionary, but failure to warn pilot was not); *United Air Lines, Inc.* v. *Wiener* (9th Cir. 1964) 335 F.2d 379, 397-398, cert. dism. *sub nom. United Air Lines, Inc.* v. *United States* (1964) 379 U.S. 951 [13 L.Ed.2d 549, 85 S.Ct. 452] (decision to conduct air flights was discretionary, but failure to warn commercial airline was not); *United States* v. *White* (9th Cir. 1954) 211 F.2d 79, 82 (decision not to 'dedud' army firing range assumed to be discretionary, but telling person about to go onto range that it was safe not discretionary); *Costley* v. *United States* (5th Cir. 1950) 181 F.2d 723, 724-725 (discretionary function to admit patient to hospital, but no immunity for treatment thereafter); *Bulloch* v. *United States* (D. Utah 1955) 133 F.Supp. 885, 889 (decision as to how and when and in what manner to conduct nuclear tests was discretionary, but failure to give proper notice was not); *Hernandez* v. *United States* (D. Hawaii 1953) 112 F.Supp. 369, 371 (discretionary to erect road block, but failure to warn of the hazard created was not); *Worley* v. *United States* (D. Ore. 1952) 119 F.Supp. 719, 721 (decision to use coyote traps assumed to be discretionary, but failure to warn is not)." *Johnson, supra,* 69 Cal.2d at pp. 796-797.)

of consciously exercised discretion cannot be made by County through a demurrer to a complaint containing contrary allegations.

Appellants should have had their requested leave to amend in order to allege, if they truthfully may do so, a cause of action grounded upon the failure to warn them before Decedent's release.

B. *Liability for Failure to Confine and Medicate Decedent*

*Respondents are immune from liability for failing to confine Decedent.*

Government Code section 856, subdivision (a)(1) affords public entities and their employees absolute protection from liability for "any injury resulting from *determining in accordance with any applicable enactment* . . . . [w]hether to confine a person for mental illness . . . ." (Italics supplied.) However, the immunity is limited in subdivision (b), which states that "[a] public employee is not liable *for carrying out with due care* a determination described in subdivision (a)." (Italics supplied.) Hence if a public employee makes such an immunized decision, but thereafter carries out that decision without due care, he is liable. Furthermore, subdivision (c)(1) explicitly limits the immunity of subdivision (a): "(c) Nothing in this section exonerates a public employee from liability for injury proximately caused by his *negligent or wrongful act or omission in carrying out or failing to carry out*: (1) A determination to confine or not to confine a person for mental illness or addiction." (Italics supplied.) Hence section 856 provides immunity only for injuries resulting from the determination whether to confine, but provides for liability when a public employee negligently carries out that determination.

In the case at bench, Appellants seek to amend their complaint to allege that Sheriffs made a determination to confine Decedent for mental illness, but failed to exercise due care in carrying out that determination. Although Appellants do not articulate the authority under which they allege Sheriffs made a "determination" to confine Decedent for mental illness, such allegation can only be grounded on Penal Code section 4011.6,[10] which authorized Sheriffs to

---

[10]Penal Code section 4011.6 provides, in relevant part:

"In any case in which it appears to the person in charge of a county jail . . . that a person in custody in such jail . . . may be mentally disordered, he may cause such prisoner to be taken to a facility for 72-hour treatment and evaluation pursuant to Section 5150 of the Welfare and Institutions Code and he shall inform the facility in writing which shall be confidential, of the reasons that such person is being taken to the facility. The local mental health director or his designee may examine the prisoner prior to transfer to a facility for treatment and evaluation. Thereupon, the provisions of Article 1 (commencing with Section 5150), Article 4 (commencing with Section 5250), Article 4.5 (commencing with Section 5260), Article 5 (commencing with Section 5275), Article 6 (commencing with Section 5300), and Article 7 (commencing with Section 5325) of chapter 2 and chapter 3 (commencing with Section 5350) of Part 1 of Division 5 of the

transfer Decedent to a facility for 72-hour treatment and evaluation pursuant to section 5150 of the Welfare and Institutions Code.[11] We hold that such allegation will not state a cause of action in view of the immunity granted by section 856.

Our Supreme Court has expressly held that the scope of the immunity granted in section 856, subdivision (a)(1) "extends not only to the final determination to confine or not to confine the person for mental illness, but *to all determinations involved in the process of commitment.* (Cf. *Hernandez* v. *State of California* (1970) 11 Cal.App.3d 895, 899-900 [90 Cal.Rptr. 205].)" (*Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d at p. 448 (italics supplied); see also *McDowell* v. *County of Alameda* (1979) 88 Cal.App.3d 321, 326 [151 Cal.Rptr. 779].) Nor is such immunity limited to persons designated under Welfare and Institutions Code section 5150 as authorized finally to adjudicate a patient's confinement:

"The language and legislative history of section 856 . . . suggest a far broader immunity. In 1963, when section 856 was enacted, the Legislature had not established the statutory structure of the Lanterman-Petris-Short Act. Former Welfare and Institutions Code section 5050.3 (renumbered as Welf. & Inst. Code, § 5880; repealed July 1, 1969) which resembled present section 5150, authorized emergency detention at the behest only of peace officers, health officers, county physicians, or assistant county physicians; former section 5047 (renumbered as Welf. & Inst. Code, § 5551; repealed July 1, 1969), however, authorized a petition seeking commitment by any person, including the 'physician attending the patient.' The Legislature did not refer in section 856 only to those persons authorized to institute emergency proceedings under section 5050.3; it broadly extended immunity to all employees who acted in accord with 'any applicable enactment,' thus granting immunity not only to persons who are empowered to confine, but also to those authorized to request or recommend confinement." (*Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d at p. 447.) In the case at bench, there is no suggestion that anyone empowered to confine (such as a physician) had made a determination by the time Decedent was released. Thus, any action (or inaction) by Sheriffs

---

Welfare and Institutions Code shall apply to the prisoner.

". . . Where the person in charge of the jail . . . causes the transfer of the prisoner to a 72-hour facility the person shall immediately notify the local mental health director or his designee and each court within the county where the prisoner has a pending proceeding about such transfer; upon notification by the person in charge of the jail or juvenile detention facility the court shall forthwith notify counsel for the prisoner and the prosecuting attorney in the criminal . . . proceedings about such transfer. . . ."

[11]Welfare and Institutions Code section 5150 provides, in relevant part: "When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer . . . may, upon probable cause, take . . . the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation. . . ."

with respect to Decedent pursuant to Penal Code section 4011.6 took place *in the process of commitment.* It does not constitute "the type of careless or wrongful behavior *subsequent to a decision respecting confinement* which is stripped of protection by the exception in section 856." *(Id.,* at p. 449; italics supplied.)

We thus conclude that section 856 immunizes Respondents from liability for failing to confine or hospitalize Decedent in the case at bench.

*Respondents are immune from liability for failing to medicate Decedent.*

Government Code section 855.8, subdivision (a) grants public entities and public employees specific immunity for injury resulting, inter alia, from *"diagnosing or failing to diagnose"* that a person is mentally ill, and from *"failing to prescribe for mental illness . . . ."* (Italics supplied.)

 We hold that as a matter of law a sheriff does not have the authority to make the final determination of diagnosing that a person is, or is not, afflicted with mental illness. Nor can a sheriff "prescribe for mental illness." As with the final decision as to confinement for mental illness, such determinations are properly made by physicians and other persons trained in the healing arts. Accordingly, any determinations made by Sheriffs here concerning the prescribable treatment (medication) of Decedent constitute decisions involved *in the process of determining* whether to medicate, do not involve any conduct subsequent to that determination, and hence come within the immunities established by section 855.8. (See *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d at p. 448; *County of Santa Barbara* v. *Superior Court* (1971) 15 Cal.App.3d 751, 756 [93 Cal.Rptr. 406]; *Whitcombe* v. *County of Yolo, supra,* 73 Cal.App.3d at p. 713; *McDowell* v. *County of Alameda, supra,* 88 Cal.App.3d at p. 326.)[12]

### III. Appellants' Second Count

 Count two of Appellants' complaint alleges that Decedent's suicide was the proximate result of Respondents' breach of their statutory duty of care to a prisoner pursuant to Government Code section 845.6[13] by failing to summon medical care for Decedent when they knew, or had reason to know, that Decedent was in need of immediate medical care. Respondents assert that Government Code sections 855.8 and 856 provide specific immunity for their failure to summon medical care. We disagree.

---

[12]Although the cited cases did not concern section 855.8, they involved other specific immunity sections, and we are unable to detect any reason why a different analysis should apply to section 855.8.

[13]See footnote 1, *ante.*

■ Section 845.6 *creates* liability, under certain circumstances, which does not otherwise exist under the common law. "It has to do with something which exists neither privately nor publicly, an obligation of help. Under certain conditions, that is, actual or constructive knowledge of a need for immediate medical care, a duty of 'reasonable action to summon' medical care is created." (*Hart* v. *County of Orange* (1967) 254 Cal.App.2d 302, 306 [62 Cal.Rptr. 73].) Section 845.6 creates "a newly-defined duty not applicable to private persons, created by the Legislature as a special burden to be borne by public entities under limited circumstances." (*Ibid.*)

■ Although liability is created by section 845.6 "except as otherwise provided by Sections 855.8 and 856," the exception does not preclude all liability as a matter of law. To read section 845.6 as Respondents contend, generating an illusory obligation wholly consumed by exceptions, would violate the basic rule of construction which prefers an interpretation giving effect to all statutory provisions. (Code Civ. Proc., § 1858.) As explained above, section 855.8 immunizes the failure *to diagnose or to prescribe treatment,* and section 856 immunizes the determination whether *to confine,* for mental illness or addiction. The scope of those immunities, we hold, is more limited than the scope of the general duty to summon medical care created by section 845.6. Though merely calling a doctor or other trained health care provider to examine a prisoner may be sufficient in a hypothetical case, we need not, and do not, speculate on the nature of the medical care, if any, which here should have been summoned for Decedent. That, as well as the questions of Sheriffs' actual or constructive knowledge of Decedent's need for immediate care, and of Sheriffs' reasonable action to summon or not to summon such care, are questions of fact to be determined at trial. Thus, it was error to sustain the demurrer to Appellants' second count.

The judgment (order) dismissing the complaint is reversed, and the cause is remanded for further proceedings in accordance with the views we have expressed.

Thompson, J., and Johnson, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied July 20, 1983.