[No. B008743. Second Dist., Div. Seven. Dec. 19, 1985.]

LUCY VON BATSCH et al., Plaintiffs and Appellants, v.
AMERICAN DISTRICT TELEGRAPH COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Zimmerman, Rosenfeld & Gersh and Sandy Ethan Tandler for Plaintiffs and Appellants.

Lawler, Feliz & Hall, Wayne S. Grajewski, Chase, Rotchford, Drukker & Bogust, John A. Daly and Ladell Hulet Muhlstein for Defendants and Respondents.

## Opinion

**THOMPSON, J.**—In this opinion, we hold that the County was properly dismissed as a defendant because its officers owed no duty of care to the decedent.

Plaintiffs Lucy Von Batsch and Check Service Company (Check Service) filed a complaint for wrongful death against American District Telegraph Company (ADT), a burglar alarm company, and the County of Los Angeles (County). The decedent, the husband of Von Batsch and president of Check Service, was killed by unknown intruders on his business premises. Check Service appeals from its dismissal as a plaintiff after the trial court sustained ADT's demurrer without leave to amend to Check Service's sole cause of action. Von Batsch appeals from the order dismissing the County as a defendant following the sustaining of County's demurrer without leave to amend to the sole cause of action against the County.[1]

I

### *Factual and Procedural Background*

The allegations of the second and third causes of action of the complaint which we must accept as true show the following: At the time of decedent's death, ADT provided burglar alarm service to Check Service for its business premises in Compton pursuant to a written contract which provided that if the alarm indicated an unauthorized entry, ADT would contact local police and dispatch its own employee to investigate the cause of the alarm. On January 14, 1983, at 4:49 a.m., ADT received such an indication and notified the County Sheriff's Department. About 5:15 a.m., the deputies arrived at the premises and investigated the premises. After their investigation they told Check Service employees that they had investigated the premises and there were no intruders there. About 6:55 a.m., ADT employees arrived to conduct their investigation. They examined the front and rear doors and all windows. However, neither the ADT employees nor the deputies inspected the roof although directly adjacent to the premises was a stairway leading to a platform which would have given an unimpeded view of the roof. Had they examined the roof, "they would have discovered five separate holes in which intruders attempted to, and eventually did, gain unauthorized access to the [p]remises, and would have been put on alert that

---

[1]The orders of dismissal involved only the second and third causes of action of the complaint. There was no demurrer to the first cause of action where Von Batsch is suing ADT for wrongful death.

such intruders were still lurking on the [p]remises." About 7:10 a.m., the ADT employees reported to ADT that there had been no break-in at the premises. Even though the alarm continued to indicate the presence of intruders, ADT undertook no further action to contact the sheriff's department, did not send other employees to investigate nor inform Check Service employees. About 8 a.m., decedent entered the premises to begin work and was killed by intruders.

In the second cause of action for "negligence," Check Service further alleged that as a result of ADT's "gross negligence," which contributed to the death of decedent, it was deprived of the financial benefits of the services of a key employee. In the third cause of action for "wrongful death," Von Batsch further alleged that as a result of County's "gross negligence," which contributed to the death of decedent, she had lost his society, comfort, attention, services and support.

ADT demurred to the second cause of action on the ground that an employer has no cause of action for the wrongful death of its employee. County demurred to the third cause of action on the grounds of governmental immunity and lack of a causal relationship between its alleged omission and decedent's death. This appeal followed the entry of orders of dismissal upon the sustaining of demurrers without leave to amend.

## II

### Standards of Review

■ In reviewing a judgment of dismissal entered upon the sustaining of a demurrer without leave to amend, we treat the demurrer as admitting all material facts properly pleaded and all reasonable inferences which can be drawn therefrom. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865]; *Service Employees International Union* v. *Hollywood Park, Inc.* (1983) 149 Cal.App.3d 745, 757 [197 Cal.Rptr. 316].) ■ The function of a demurrer is to test the sufficiency of a pleading by raising questions of law. (*Buford* v. *State of California* (1980) 104 Cal.App.3d 811, 818 [164 Cal.Rptr. 264]; *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 702 [141 Cal.Rptr. 189].) ■ It is error to sustain a demurrer where a plaintiff has stated a cause of action under any possible legal theory. (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817]; *Service Employees International Union* v. *Hollywood Park, Inc., supra,* 149 Cal.App.3d 757.) But it is not an abuse of discretion to sustain a demurrer without leave to amend if there is no reasonable possibility that the defect can be cured by amendment. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737]; *Keyes* v. *Santa Clara Valley Water Dist.*

(1982) 128 Cal.App.3d 882, 885 [180 Cal.Rptr. 586].) Plaintiff bears the burden of demonstrating that the trial court abused its discretion by showing in what manner it can amend its complaint and how that amendment will change the legal effect of its pleading. (*Johnson* v. *County of Los Angeles* (1983) 143 Cal.App.3d 298, 306 [191 Cal.Rptr. 704].)

III

*Check Service Cannot State a Cause*
*of Action Under Civil Code*
*Section 49 for Death of Its Employee*

Check Service contends that sustaining ADT's demurrer was an abuse of discretion because (1) it sufficiently stated a cause of action pursuant to Civil Code section 49, subdivision (c), for damages resulting from the death of an employee caused by a third party's negligence; and (2) in any event, it should have been granted leave to amend to state a cause of action for breach of contract against ADT.

Civil Code section 49, originally enacted in 1872 and last amended in 1939, provides in pertinent part: "The rights of personal relations forbid: . . . . (c) Any injury to a servant which affects his ability to serve his master, other than seduction, abduction or criminal conversation."

In *I. J. Weinrot & Son, Inc.* v. *Jackson* (1985) 40 Cal.3d 327, 341 [220 Cal.Rptr. 103, 708 P.2d 682], our Supreme Court recently held that "section 49, subdivision (c) does not provide a right of action for a corporate employer seeking recovery for expenses and lost profits incurred as a result of negligent injury to its employees." A fortiori, that statute does not create a cause of action which would allow a corporate employer to sue for the death, not injury, of an employee.

Indeed, even before the decision in *Weinrot,* such a claim had been uniformly rejected by courts considering this precise issue. (See, e.g., *Knowlton* v. *Pacific Southwest Airlines* (1980) 113 Cal.App.3d 152 [169 Cal.Rptr. 668]; *Owens* v. *United States* (9th Cir. 1983) 713 F.2d 1461, 1468 [applying California law]; *Harris Corp.* v. *Comair, Inc.* (6th Cir. 1982) 712 F.2d 1069, 1071 [applying Kentucky law]; *Preiser Scientific, Inc., of Ohio* v. *Piedmont Aviation, Inc.* (4th Cir. 1970) 432 F.2d 1002 [applying West Virginia law]; *Bowen* v. *Pan Am. World Airways, Inc.* (S.D.N.Y. 1979) 474 F.Supp. 563, 565 [applying Alaska law]; *Fuksman* v. *General Motors Corporation* (La.App. 1984) [447 So.2d 74, 75]; *Arrow Electronics, Inc.* v. *Stouffer Corp.* (1982) 117 Misc.2d 554 [458 N.Y.S.2d 461, 462-463]; *Snow* v. *West* (1968) 250 Ore. 114 [440 P.2d 864, 865].)

The complaint filed herein was "for wrongful death," and the second cause of action by Check Service against ADT was labeled "negligence." Check Service, however, cannot state a cause of action for wrongful death. (*Knowlton* v. *Pacific Southwest Airlines, Inc., supra,* 113 Cal.App.3d at p. 154.)

■ A wrongful death action in California is wholly statutory. (*Steed* v. *Imperial Airlines* (1974) 12 Cal.3d 115, 119-120 [115 Cal.Rptr. 329, 524 P.2d 801, 68 A.L.R.3d 1204].) "Because it is a creature of statute, the cause of action for wrongful death 'exists only so far and in favor of such person as the legislative power may declare.'" (*Justus* v. *Atchison* (1977) 19 Cal.3d 564, 575 [139 Cal.Rptr. 97, 565 P.2d 122]; *Garcia* v. *Douglas Aircraft Co.* (1982) 133 Cal.App.3d 890, 893 [184 Cal.Rptr. 390].) Thus, the right to bring an action for the wrongful death of a human being is strictly limited to only those persons described in Code of Civil Procedure section 377. (*Steed* v. *Imperial Airlines, supra,* 12 Cal.3d 115 [dependent stepchild denied recovery because at that time stepchild not listed in § 377]; *Nieto* v. *City of Los Angeles* (1982) 138 Cal.App.3d 464, 470 [188 Cal.Rptr. 31] [fiancee denied recovery]; *Garcia* v. *Douglas Aircraft Co., supra,* 133 Cal.App.3d 890 [meretricious spouse denied recovery].) ■ Since employers are not listed in section 377, they do not have standing to sue for the wrongful death of an employee. Accordingly, the cause of action herein was demurrable.

■ The trial court, however, abused its discretion in granting the demurrer without leave to amend. In their opposition to the demurrer, Check Service had specifically requested leave to amend their complaint to state a cause of action for breach of contract. This was the original complaint. There had been no previous attempts to amend. Liberality in permitting amendment is the rule, not only where a complaint is defective as to form but also where it is deficient in substance where, as here, a fair prior opportunity to correct the substantive defect has not been given. (*Johnson* v. *County of Los Angeles, supra,* 143 Cal.App.3d 298, 306.) If there is any reasonable possibility that a plaintiff can state a good cause of action it is error to deny leave to amend. (*Okun* v. *Superior Court* (1981) 29 Cal.3d 442, 460 [175 Cal.Rptr. 157, 629 P.2d 1369].)

Although in the original complaint Check Service sought recovery on a tort theory of negligence, the complaint also alleged the existence of a burglar alarm services agreement between ADT and Check Service providing, inter alia, for ADT to send employees to investigate the premises in the event the alarm system indicated an unauthorized entry. A copy of the written contract was attached to the complaint and incorporated by reference. The same wrongful act under certain situations may constitute both a breach

of contract and a tort. (See *L. B. Laboratories, Inc.* v. *Mitchell* (1952) 39 Cal.2d 56, 60 [244 P.2d 385] [contract cause of action from accountant's negligent failure to carry out promise]; 3 Witkin, Cal. Procedure (3d ed. 1985) § 119, pp. 148-150; but see §§ 121-122, pp. 151-155.) We cannot say that there is no reasonable possibility that Check Service can amend its complaint to allege the necessary facts to state a valid cause of action for breach of contract. Check Service, therefore, should be granted the opportunity to attempt to state a legally sufficient cause of action under a contract theory and to seek contractual damages for any alleged breach.[2]

### IV

### *The County Was Properly Dismissed Because It Owed No Duty of Care*

 Von Batsch contends that the trial court abused its discretion in sustaining a demurrer to her cause of action against the County. She claims that the officers owed a duty of care to decedent which they breached by failing to investigate the roof, their negligence proximately caused his death, and the County was not immune from liability.

██ ██ "Conceptually, the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity." (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-202 [185 Cal.Rptr. 252, 649 P.2d 894]; accord *Williams* v. *State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233,

---

[2]We are not persuaded to the contrary by ADT's claim that, because a death occurred, a wrongful death action under Code of Civil Procedure section 377, which is unavailable to Check Service as an employer, is the exclusive remedy and no cause of action for corporate damages from a breach of contract can ever possibly be stated despite the fact that there was a contractual arrangement between ADT and Check Service. As Check Service points out, *Knowlton* v. *Pacific Southwest Airline, Inc., supra,* 113 Cal.App.3d 152, is distinguishable because there was no contract alleged between the plaintiff employer and the defendant in that case. *Nieto* v. *City of Los Angeles, supra,* 138 Cal.App.3d 464, is also inapposite because in that case the "[p]laintiff concede[d] that her complaint [was], in essence, one for wrongful death" and merely challenged her lack of standing to sue on the grounds that a literal reading of section 377 excluding her violated equal protection. (*Id.,* at p. 468.) Nor does *Justus* v. *Atchison, supra,* 19 Cal.3d 564, support ADT's position. If all legal theories were necessarily subsumed under the wrongful death statute whenever the factual incident involved a death, the Supreme Court in *Justus* would not have discussed separately the questions of the validity of causes of action (1) for wrongful death, and (2) for shock under a *Dillon* v. *Legg* [(1968) 68 Cal.2d 728 (69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316)] theory arising out of the death of an unborn fetus.

664 P.2d 137].)[3] " 'Absence of duty is a particularly useful and conceptually more satisfactory rationale [than governmental immunity] where, absent any 'special relationship' between the officers and the plaintiff, the alleged tort consists merely in police nonfeasance.' " (*Williams* v. *State of California, supra,* quoting Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 2.65.) ██ We, therefore, turn to the threshold question of duty.

██ The general rule is that one owes no duty to control the conduct of another, nor to warn those endangered by such conduct. Such a duty arises only if (a) a special relation exists between the actor and the tortfeasor which imposes a duty upon the actor to control the tortfeasor's conduct, or (b) a special relation exists between the actor and the victim which gives the other a right to protection. (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 203.) ██ Also, "[a]s a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act." (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 23; *Stout* v. *City of Porterville, supra,* 148 Cal.App.3d 937, 942; Rest.2d Torts, §§ 314, 323.) The "Good Samaritan" or volunteer who, having no initial duty to do so, undertakes to come to the aid of another, "is under a duty to exercise due care in performance and is liable if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 23.)

██ As our Supreme Court pointed out, "[a]pplication of these general principles in the area of law enforcement and other police activities has produced some confusion and conflict. To an extent, the concepts are muddied by widely held misconceptions concerning the duty owed by police to individual members of the general public. [Fn. omitted.]" (*Id.,* at pp. 23-24.) ██ A law enforcement officer's duty to protect the citizenry is a general duty owed to the public as a whole. (*South* v. *State of Maryland* (1856) 59 U.S. 396, 403 [15 L.Ed. 433, 435].) The intended beneficiaries of any investigation that is undertaken are the People as prosecutors in

---

[3]Although the trial court sustained the demurrer on grounds of lack of proximate cause and governmental immunity, the question of the existence of a duty by the officers towards the decedent has been thoroughly briefed by the parties on appeal. The existence of a duty is entirely a question of law. (*Stout* v. *City of Porterville* (1983) 148 Cal.App.3d 937, 941 [196 Cal.Rptr. 301].) If the judgment is proper on any grounds, including lack of duty, it is our duty to affirm it. (See *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938, 940 [41 Cal.Rptr. 508].)

criminal cases, not private individuals. (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 24, fn. 4.) " 'A person does not, by becoming a police officer, insulate himself from any of the basic duties which everyone owes to other people, *but neither does he assume any greater obligation to others individually. The only additional duty undertaken by accepting employment as a police officer is the duty owed to the public at large.*' " (*Id.,* at p. 24, fn. 3; italics in original.) Thus, absent a special relationship creating a special duty, the victim of a crime that the police might have prevented cannot recover. (See, e.g., *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197; *Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6, 9-10 [120 Cal.Rptr. 5]; Note, *Police Liability for Negligent Failure to Prevent Crime* (1981) 94 Harv. L. Rev. 821, 824.)

 Von Batsch concedes that the officers had no general duty to control the assailants' conduct but argues that under the Good Samaritan doctrine, their decision to investigate the premises and the reporting thereof created a special relationship between the officers and decedent which imposed upon the officers a general duty to protect decedent. We disagree.

The mere fact that officers responded to a burglar alarm at a business premises and proceeded to investigate did not create a special relationship. (*Antique Arts Corp.* v. *City of Torrance* (1974) 39 Cal.App.3d 588, 592-593 [114 Cal.Rptr. 332].) Nor did the undertaking here of an investigation by officers create a special relationship giving rise to a duty to include specified actions—such as inspection of the roof—within its scope or to protect from future harm any particular individuals who might later arrive at the premises hours after the officers had left the scene.

Under the Good Samaritan doctrine, law enforcement officers may voluntarily assume a protective duty towards a certain member of the public and undertake action on behalf of that person, thereby inducing reliance. Such a duty may arise "when an express promise to warn of a danger has induced reliance, or when the actions of the [officer] place a person in peril or increase the risk of harm." (*Clemente* v. *State of California* (1985) 40 Cal.3d 202, 213 [219 Cal.Rptr. 445, 707 P.2d 818]; see also *Williams* v. *State of California, supra,* 34 Cal.3d at pp. 24-25; *Davidson* v. *City of Westminster, supra,* 32 Cal.3d at pp. 206-207.)

One cannot recover for "*injuries caused by the failure of police personnel* to respond to requests for assistance, the failure *to investigate properly, or the failure to investigate at all, where the police had not induced reliance on a promise,* express or implied, that they would provide protection. [Ital-

ics added.]'' (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 25; accord *Clemente* v. *State of California, supra,* 40 Cal.3d at p. 212.)

A special relationship may also be predicated on detrimental reliance upon "the *conduct* of a police officer, in a situation of dependency, result[ing] in detrimental reliance on him for protection." (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 25.) But, there must be an affirmative act which created the peril, contributed to, increased, or changed the risk or prevented other assistance. (*Id.,* at pp. 25-28; *Davidson* v. *City of Westminster, supra,* 32 Cal.3d at pp. 207-208; *Harris* v. *Smith* (1984) 157 Cal.App.3d 100, 105 [203 Cal.Rptr. 541].)

In *Davidson,* the plaintiff was stabbed in a laundromat during a police stakeout. There had been a similar assault at the same laundromat the night before while the officers were conducting their surveillance. The police observed the victim in the laundromat and also saw the man who they recognized as the likely perpetrator of the prior assault but did not warn her or otherwise intervene to protect her.

The *Davidson* court rejected the plaintiff's argument that the fact that the officers had undertaken to surveil the premises for the purpose of apprehending the criminal created a special relationship between the officers and the victim or assailant. The court noted that no special relationship could be maintained on the basis of a promise to protect her since no such promise had been made. (32 Cal.3d at pp. 206-207.) The court further found that no special relationship could be maintained on the basis of the officers' conduct since the police did not create the peril or change the risk as she was unaware of their presence and did not rely on them for protection. (*Id.,* at p. 208.)

In *Williams,* the Supreme Court also found no duty where highway patrolmen arrived at the scene of the accident and undertook an investigation. The injured plaintiff claimed that the officers were negligent in failing to test the object which struck her, to secure the names of witnesses and to attempt investigation or pursuit of the owner or driver of the truck. The *Williams* court held there was no duty to so aid plaintiff.

As the *Williams* court explained, in terms particularly applicable to the case herein: "There are no allegations that the officers assured her, either expressly or impliedly, that they would do any of the acts she faults them for not doing, no allegations that they conducted themselves in such a manner as to warrant reliance upon them to do the acts which the plaintiff alleges they should have done nor, finally, is there any hint that they prevented plaintiff from conducting an investigation of her own. [Fn. omitted.]" (34 Cal.3d at p. 27.)

In *Jackson* v. *Clements* (1983) 146 Cal.App.3d 983 [194 Cal.Rptr. 553], no special relationship arose between law enforcement officers and intoxicated minors from the officers' investigation of a party at which alcoholic beverages were being served. The court found that the officers had no duty to the decedent minor to stop intoxicated minor defendants from driving or her from riding with them, despite their knowledge that they were too intoxicated to drive and intended to drive. (See also *Shelton* v. *City of West minster* (1982) 138 Cal.App.3d 610, 621-622 [188 Cal.Rptr. 205] [plaintiffs alleged negligent investigation in failing to timely get dental records but no special relationship creating duty arose from plaintiffs' request for police aid in locating missing son nor from police undertaking to investigate fully and completely]; *Stout* v. *City of Porterville, supra,* 148 Cal.App.3d 937 [no duty from stopping and investigating sobriety of intoxicated pedestrian where they let him go and he was hit by vehicle]; *Harris* v. *Smith, supra,* 157 Cal.App.3d 100 [no duty where officer stopped speeding drunk driver, negligently investigated his sobriety, let him go and 20 minutes later he hit plaintiff's vehicle].

We similarly conclude that Von Batsch has not stated a cause of action. The allegations of the complaint fail to establish a duty of care owed by the officers of the County on the basis of reliance on a promise or on the officers' conduct in a dependency situation. The claimed "gross negligence" was the officers' failure to investigate the roof. But, there is no indication that they voluntarily assumed any responsibility to climb a stairway on adjacent premises to inspect the roof or to protect plaintiff from future harm. The officers did not promise that they would or had checked the roof. Nor did the officers, by reporting that they had investigated the premises and there were no intruders, undertake to guarantee the safety of or offer future protection to decedent or any other employee who might arrive for work three hours later.

The complaint on its face shows no detrimental reliance by decedent in a situation of dependency on the officers' conduct or statement which worsened decedent's position. The alleged tort here is merely nonfeasance—failure to inspect the roof—despite Von Batsch's attempt to characterize it as an affirmative act because they conducted an investigation and reported it. The officers did not create the peril to decedent. They took no affirmative action which contributed to, increased, or changed the risk which would have otherwise existed. At most they merely failed to eliminate the danger of unknown intruders.

We recognize that, of course, "there may be a duty to refrain from conduct which prevents others from giving assistance." (*Clemente* v. *State of*

*California, supra,* 40 Cal.3d at p. 213.) But it is not, and cannot be, alleged that the police investigation prevented or discouraged a dependent decedent from having an independent investigation undertaken, because in fact there was one. Any dependency was not on the police but on the burglar alarm company which had a contractual obligation to provide protection. The allegations of the complaint show that the reliance was on ADT to not only call the police but also to dispatch its employees to conduct its own investigation as set forth in the contract; and that subsequent independent investigation of the premises by ADT employees occurred around 7 a.m., long after the police had been there.[4]

*Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82], and *Morgan* v. *County of Yuba, supra,* 230 Cal.App.2d 938, relied on by Von Batsch, are readily distinguishable. Both involved the application of the Good Samaritan doctrine in situations where the victim justifiably relied to his or her detriment on the officer's undertaking to provide specific future protection. In *Morgan,* a special relationship arose because the officer specifically promised to warn the decedent if a prisoner who had threatened her life was released. He failed to do so and she was killed by that person. In *Mann,* the officer by his conduct "had undertaken to protect the plaintiff from future physical harm." (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 26.) He had placed his car with lights flashing behind stalled cars on the freeway and had changed the risk by "lulling the injured parties into a false sense of security and perhaps preventing other assistance from being sought." (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 208.) But then after calling a tow truck but without waiting for the truck to assume a protective position, he had departed, without warning the plaintiffs who were relying on his protection and who were injured minutes later by a sideswiping car. (Cf. *Mikialian* v. *City of Los Angeles* (1978) 79 Cal.App.3d 150 [144 Cal.Rptr. 794].)

In view of all the above, we conclude there is no special relationship in this case that would establish a duty to protect decedent on the part of the County officers. We, therefore, need not reach the issues of proximate cause or governmental immunity. Since there was no duty, the court properly sustained the County's demurrer without leave to amend and dismissed the County as a defendant.

---

[4]Further indications that at 8 a.m. decedent was relying on ADT, and not the police investigation three hours earlier, are the complaint's allegations that when the alarm continued to ring after 7:10 a.m., ADT negligently failed to contact the police again, send other employees to investigate or warn Check Service employees of the continued indication of possible intruders.

*Disposition*

The order dismissing County as a defendant is affirmed. The order dismissing Check Service as a plaintiff is reversed and the cause is remanded to permit Check Service leave to amend.

Lillie, P. J., and Johnson, J., concurred.