**Robert GUY, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

Civ. No. C–78–0141 RHS.

United States District Court,
N. D. California.

April 15, 1980.

William E. Growney, San Francisco, Cal., for plaintiff.

G. William Hunter, U.S. Atty., San Francisco, Cal., Deborah M. Seymour, Asst. U.S. Atty., Civ. Div., San Francisco, Cal., for defendant.

WYATT,* District Judge:

This is the decision after trial without a jury on April 7 and 8, 1980. There will be judgment for the defendant.

The action is for money damages against the government under the Federal Tort Claims Act (28 U.S.C. §§ 2671–80). This Court has jurisdiction under 28 U.S.C. § 1346(b). Plaintiff has satisfied the statutory conditions for maintenance of an action for damages against the government (28 U.S.C. §§ 2401, 2675(a)).

Plaintiff Robert Guy was convicted of bank robbery in a federal court and was sentenced as a youth offender. On September 5, 1976, Guy was serving his sentence at the Federal Correctional Institution at Pleasanton, California, a minimum security place of confinement in this District; he had been there about a month. He had a room on the first floor of Unit No. 4, a two story dormitory housing some sixty inmates in double or single rooms.

On September 5, 1976, Guy was, without provocation, assaulted and beaten by three inmates at Pleasanton and sustained painful injuries. His claim here is that the federal employees at Pleasanton, a facility operated by the Bureau of Prisons, were negligent in not preventing the attack on him. If he can establish negligence, under negligence principles in California law, then he, although a federal prisoner, would be entitled to damages against the government under the Federal Tort Claims Act. *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The difficulty with his claim is not the law but that on the facts I am unable to find negligence.

It may be noted that California, it seems, would not allow a prisoner in a state insti-

* of the Southern District of New York, sitting by designation.

tution to recover for injuries inflicted by another prisoner. Gov. C.A. § 844.6. This would not affect a remedy under the Federal Tort Claims Act because "having decided that discipline in the federal prisons will not be so seriously impaired that all recovery should be denied for negligently inflicted injuries, we should not at the same time make recovery depend upon a state's decision to the contrary." *United States v. Muniz*, above cited, 374 U.S. at 165, 83 S.Ct. at 1859. This federal court is therefore instructed to disregard California prohibitions against prisoner suits and to apply the general law of California which requires the exercise of "reasonable care" under the "particular set of circumstances". *U.S. Liability Insurance Co. v. Haidinger-Hayes, Inc.*, 1 Cal.3d 586, 593, 83 Cal.Rptr. 418, 463 P.2d 770 (1970).

There were four units at Pleasanton; at least one of these housed women because Pleasanton was co-educational. In each unit, there was a guard officer on duty at all times; he had a desk in the common area on the first floor; he regularly patrolled the interior of the building and supervised the inmates.

Pleasanton opened in April 1974 and the assault on Guy on September 5, 1976, was the first such instance. There had been a few fisticuffs of a minor character, producing "fat lips" as a witness put it, arising from jealousies caused by women. There was no notice to the authorities, however, that there was any danger of violent behavior by the inmates. The institution was a relaxed, low-key, peaceful place.

It will appear that the attack on Guy was caused by three inmates making and drinking an alcoholic home brew called "pruno" which made them intoxicated. The evidence was that this was the first instance of drunkenness at Pleasanton and thus the authorities had no notice of any risk of such behavior. Pruno is easily made from water, sugar, fruit and yeast—materials easily available, even in a prison. At Pleasanton, however, pruno had been found only 2 or 3 times in the period before September 5, 1976. There was thus no notice of any risk from pruno.

Vaile, Picotte and Gates were the three inmates who assaulted Guy. Vaile seems to have been the leader and the most aggressive. Guy knew the three. They had no reputation for violence and were in fact believed to be generally "mellow".

Several days before the incident, Vaile and Picotte asked Guy how to make pruno. He told them and knew they were making it, but did not notify the guard or any other authority.

During the day and sometimes in other hours inmates were allowed to circulate in the yard outside the units. Two additional guards were on duty in the yard. They occasionally patrolled inside the units as well as did a supervisor of the facility who was stationed in the "control area".

The assault took place about nine in the evening. Before nine the inmates are allowed to circulate in the yard and the common areas of the unit or to remain in their rooms. At nine they must return to their rooms for a "count", which is taken by verifying the presence of each inmate in his room. After the count, they may move about inside the unit until midnight. The attack on Guy took place when he met the three assailants shortly before nine in the hallway on the second floor of unit four. The three were drunk and beat Guy without provocation. After the attack, Guy did not report his injuries but returned to his room on the first floor where he was discovered washing blood from his face by the unit officer, Friel, while Friel was taking the nine o'clock count. The officer then got the help of several other officers. Guy was taken at once to a hospital where he was treated for a broken jaw and an injured hand. Shortly after ten o'clock, Officer Friel discovered a plastic container—normally used for wax or some other housekeeping material—with pruno, hidden in a shower room on the second floor. To identify the assailants an inspection of all hands was made but nothing was discovered. Later, Vaile, in a more drunken condition, became violent and had to be put in handcuffs; he was eventually taken to a state jail.

The pruno found in the shower room had been made by Vaile, Picotte, and Gates and, drinking it, they became drunk. This led to the assault.

The contention for Guy is that the officers at Pleasanton were negligent in that they failed to take reasonable precautions against the drinking of alcohol by the inmates. Guy argues that failure to discover the pruno led to its consumption by the three inmates which led to their drunkenness which in turn caused their assault on Guy.

The duty on the employees of the government was to use reasonable care under the circumstances. The burden on the plaintiff is to establish that they did not do so. This burden has not been met.

The chief contention is that the officers should have discovered the pruno. It has a distinctive smell and requires a container; thus Guy argues that it should have been discovered during the fermentation process.

The evidence is that the officers made reasonable efforts to prevent making alcohol. It was against the rules of the institution to have or to make liquor. The officers testified that they were alert for illicit liquor, would have sought it out, and would have confiscated it, had they believed there was any at Pleasanton. This is not directly contradicted in the testimony of Guy; in fact, he testified that the officers were "quite strict". He testified that the unit smelled strongly of pruno for several days before the assault. In this, the evidence as a whole, is that he was mistaken. On September 5, 1976, when Friel went into the shower room he was able to smell the pruno, but outside that room the odor could not be detected. Friel, Rhodes and Morris gave credible testimony that they toured unit four on a number of occasions before the assault and could not smell pruno or any other liquor. No reason is suggested why they would have ignored such an odor, had they detected it.

The officers made visual inspections of a reasonable character. The room of each inmate was inspected daily for cleanliness. Except with some basis for suspicion, the rooms were generally not searched for contraband and the experience at Pleasanton indicated no necessity for doing so. There was no reason to suppose that a problem existed.

There are decisions about negligence in penal institutions which point out that due care at minimum security institutions is satisfied by less strict supervision than would be required at a maximum security prison where hardened individuals would be present. *Jones v. United States*, 534 F.2d 53, 54 (5th Cir. 1976); *Cohen v. United States*, 252 F.Supp. 679, 688 (N.D.Ga. 1966). In the case at bar, even more thorough searches would probably not have led to finding the pruno because it was in an innocent appearing container, one normally used for wax, cleaning fluid or the like housekeeping items. Considering that Pleasanton was minimum security, co-ed, having a peaceful history, with no assaults before, no widespread making of pruno, no drunkenness—the searches and inspections by the government employees were reasonable.

It is repeated that the three assailants had no history of violence; on the contrary, Guy himself testified that they were normally "mellow".

The foregoing contains the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

The Clerk is directed to enter judgment for defendant.

SO ORDERED.