Opinion
 

 MCDANIEL, J.
 

 This appeal presents for review the propriety of the trial court’s granting of defendant Kaiser Steel Corporation’s motion for summary
 
 *33
 
 judgment. Plaintiff James Nicewarner, an employee of defendant, was injured on the job and received workers’ compensation benefits. Nevertheless, he proceeded to file a regular civil action against his employer, seeking money damages under the so-called dual capacity exception to the exclusive remedy principle applicable to workers’ casualty claims against their employers.
 

 We share the trial court’s view that there were no disputed issues of material fact presented at the time the motion was considered, and that such facts, as a matter of law, did not provide the occasion to invoke the dual capacity exception noted. We shall therefore affirm the judgment in favor of defendant.
 

 Proceedings in the Trial Court
 

 After plaintiff’s workers’ compensation claim against his employer had been adjusted by plaintiff’s receipt of benefits in excess of $65,000, he filed a plenary civil action against his employer seeking to recover additional damages. In plaintiff’s original complaint he alleged that on a particular day Kaiser Steel was constructing an oxygenator facility at its Fontana plant, and that he, plaintiff, was a Kaiser employee, “acting within the course and scope of his employment, and engaged in the performance of his duties” at the oxygenator construction site. The complaint further alleged that Kaiser Steel had not provided adequate safety measures at the construction site and that, as a result, he fell from the structure and was injured.
 

 Later plaintiff filed an amended complaint adding four counts. They were for negligence, strict products liability, and for breach of express and implied warranties for fitness in Kaiser Steel’s design and manufacture of the steel beams used to construct the oxygenator facility. In each count plaintiff alleged in particular, because of his employer’s negligence, that he was caused to fall and thereby to suffer severe personal injuries.
 

 In its answer, defendant included as an affirmative defense that plaintiff’s exclusive remedy for any injuries he had suffered lay in recourse to the workers’ compensation law.
 

 Defendant later moved for summary judgment. The motion was supported by three declarations. The declarants included Harlan A. Polk, a retired safety engineer formerly employed by Kaiser, Gerry C. Robb, an engineering manager employed by Kaiser, and Michael L. Dufek, a workers’ compensation administrator employed by Kaiser.
 

 The construction of the oxygenator facility above noted required in the first instance the erection of a structural steel framework which involved the joining together of horizontal and diagonal steel beams with vertical columns.
 

 
 *34
 
 Plaintiff was employed directly in connection with this effort. Just before his fall he was standing on a horizontal beam which was held in place by diagonal braces. It had not been bolted or welded to the adjoining vertical columns. Plaintiff had tied his safety line around the horizontal beam, notwithstanding that it was not permanently anchored in place. Plaintiff then made an attempt to fasten a diagonal to a horizontal beam which was resting on a seat connection. Just before his fall, plaintiff stepped to a position on a vertical column and failed to disconnect his safety line from the horizontal beam to which it was secured. The horizontal beam, which had become dislodged from its resting place by the earlier effort, fell 15 feet to the ground pulling plaintiff with it because of his safety line connection.
 

 In the exact language of Mr. Polk, “Mr. Nicewarner clearly was in the process of connecting this configuration by making a connection between the diagonals and the horizontal beam and ultimately with the purpose of connecting the horizontal beam to the columns; [¶] The beam and diagonals were designed to provide structural support to the building, and the beam was also designed to provide support for flooring and planking[.]”
 

 The declaration of Mr. Robb, among other things, states that “The unit beam in question was fabricated by the fabricated products division of Kaiser Steel Corporation, for Kaiser Steel Corporation’s own use in the construction of Kaiser Steel Corporation’s basic oxygen furnace facility; [f] The unit beam was fabricated specifically for this particular job on a special order basis, and was not made for sale to, nor were they sold to, members of the general public.”
 

 His declaration also states that “all of the columns, beams, diagonals, and in particular, the unit beam in question, were fabricated according to detail drawings approved by Kaiser Engineers; [1] These particular steel members were fabricated from plates; [If] These structural steel members were fabricated to special call; [1] They were not structural steel members readily available in a stockpile situation[.]”
 

 In his opposition to the motion for summary judgment plaintiff marshalled an extensive array of discovery aimed at demonstrating that the horizontal beam which fell was not unique in that it was generally of a size and design regularly fabricated by defendant and stockpiled for sale to the public.
 

 In the course of this discovery, defendant admitted that both welded beams (the type which fell) and bolted beams (the type which contain erector holes) are routinely fabricated for use in steel structures sold by them to the public. However, it is defendant’s position in effect, that the claimed defect, i.e., the absence of erector holes in the horizontal beam, could not exist in a vacuum. In its response to plaintiff’s interrogatories, defendant stated: “No single connec
 
 *35
 
 tion method is appropriate for all situations . . . The connection method specified is that which is appropriate for the specific combination of loads and stresses at that point in the structure and the configuration of the members [i.e., beams] involved.”
 

 Plaintiff did not dispute defendant’s claim that its product consists of custom-made beams fabricated for use in unique steel structures sold to the public. Nor did plaintiff attempt to show that such steel structures generally contain the same combination of loads, stresses and beams which led to his injuries. Nor, significantly, did plaintiff show that the alleged defect posed a similar risk of injury to members of the general public.
 

 With the aforementioned showings before it, the trial court granted the defendant’s motion for summary judgment.
 

 Plaintiff’s motion for reconsideration was granted, but the motion for summary judgment was again granted on its merits. This appeal followed.
 

 Discussion
 

 In reviewing the propriety of the granting of a motion for summary judgment, the applicable guidelines are well established and are frequently stated. We have had several recent occasions to review such cases. In
 
 Golden West Broadcasters, Inc.
 
 v.
 
 Superior Court
 
 (1981) 114 Cal.App.3d 947 [171 Cal.Rptr. 95], we said, “In approaching such a decision the trial court is guided by well settled and clearly defined rules. ‘Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. ’ [Citing
 
 Stationers Corp.
 
 v.
 
 Dun & Bradstreet, Inc.
 
 (1965) 62 Cal.2d 412, 417 (42 Cal.Rptr. 449, 398 P.2d 785).]”
 
 (Id.
 
 at p. 954.)
 

 The declarations offered in support of the motion clearly demonstrated defendant’s right to summary judgment. The plaintiff was obviously injured in the course and scope of his employment, and so it only remained for defendant to demonstrate further, by factual showings, that the dual capacity doctrine urged by plaintiff was not applicable. This defendant did also.
 

 More particularly, the declarations showed, with reference to possible application of the dual capacity doctrine, that plaintiff was injured while working on the erection of a facility for use by Kaiser on its own premises at the Fontana plant. All of the beams and other members for inclusion in this structure had been designed and fabricated specifically for use in such structure. Such facts, without more, described a circumstance which imported no risk to anyone ex
 
 *36
 
 cept Kaiser’s own employees working on the erection of the structure.
 
 (Horney
 
 v.
 
 Guy F. Atkinson Co.
 
 (1983) 140 Cal.App.3d 923, 929 [190 Cal.Rptr. 18].)
 

 The next prong of the
 
 Stationers’
 
 test is whether the opposing declarations operated to raise any triable issues of material fact. As so often occurs, there was no dispute here over the observable, extrinsic facts. As a consequence, the task facing the trial court was to resolve an issue of law as presented by the undisputed facts. Plaintiff argues that the beam which fell was not “unique” in that many like it are sold for use in other structures. Here, it is enough to say that plaintiff’s purported issue of fact was no such issue, for whether the beam which fell was “unique” actually begged the legal question facing the trial court, as we shall explain.
 

 We turn then to the dispositive legal issue of the case which the trial court resolved in favor of the defendant. In seeking to avoid the exclusive remedy principle of Labor Code section 3601, plaintiff relied upon the dual capacity doctrine established in
 
 Duprey
 
 v.
 
 Shane
 
 (1952) 39 Cal.2d 781 [249 P.2d 8], and applied to employer-manufacturers in
 
 Douglas
 
 v.
 
 E. & J. Gallo Winery
 
 (1977) 69 Cal.App.3d 103 [137 Cal.Rptr. 797]. As plaintiff argued to the trial court, “Plaintiff is pursuing the
 
 Gallo
 
 theory against defendant.
 
 Gallo
 
 represents an exception to the general rule wherein an employee’s exclusive remedy against his employer for personal injuries is Worker’s Compensation.
 
 Gallo
 
 permits recovery by an employee if the employee sustains personal injuries which are proximately caused
 
 as a result of defect in manufacture or design of a product manufactured for sale to the general public by the employer.
 
 ” (Italics added.)
 

 Plaintiffs
 
 Gallo
 
 theory does not apply to his first cause of action, which alleges inadequate safety measures at the basic oxygen furnace construction site. An employer cannot be sued for civil damages for “failure to assure that the tools or substances used by the employee or the physical environment of a workplace are safe. . . .”
 
 (Johns-Manville Products Corp.
 
 v.
 
 Superior Court
 
 (1980) 27 Cal.3d 465, 475 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758].)
 

 Moreover, “[f]ailure of the employer to provide a safe place to work is the cause, or can plausibly be alleged to be the cause, of a substantial proportion of industrial accidents. It was one of the most important grounds for master-servant actions at common law [citation], which the workmen’s compensation remedy was designed to replace. Allowing a remedy in addition to workmen’s compensation for such cases would make substantial, if not devastating, inroads on the . . . workmen’s compensation scheme.”
 
 (Kottis
 
 v.
 
 United States Steel Corp.
 
 (7th Cir. 1976) 543 F.2d 22, 26, cert. den. (1977) 430 U.S. 916 [51 L.Ed.2d 594, 97 S.Ct.1328].)
 

 
 *37
 
 Apparently recognizing the difficulty of his position, plaintiff does not even argue that the trial court erred in granting summary judgment as to his first cause of action. But plaintiff does claim error in the rulings as to his other four causes of action, relying upon the
 
 Gallo
 
 theory noted. That reliance is misplaced.
 

 In determining whether to apply the dual capacity doctrine to employer/ manufacturers, the courts have heretofore focused on whether the manufacturer sells the defective product to the general public. In
 
 Douglas
 
 v.
 
 E. & J. Gallo Winery, supra,
 
 69 Cal.App.3d 103, plaintiffs were Gallo employees injured when elevator scaffolding on which they were working collapsed. The scaffolding was manufactured by Gallo for sale to the general public. The Court of Appeal reversed the sustaining of Gallo’s demurrer, reasoning: “There is no reason to relieve a manufacturer who sells to the public of liability
 
 as a manufacturer
 
 by the chance circumstance that the defendant manufacturer also happens to be an employer of the injured person. The deterrent value of a manufacturer’s liability to promote the manufacture of sale [szc] products is effectively reduced if recovery is limited to workers’ compensation, [t] We limit the holding of this case to a defendant who engages in manufacturing for sale to the general public. A single or occasional disconnected act does not constitute engaging in such manufacturing. The defendant who designs or manufactures a product for his own use and subsequently does sell an extra one of the products to his neighbor or to a similar business is not thereby subjected to manufacturers’ liability when his own employee is injured in using the retained product. On the other hand, manufacturers’ liability clearly arises where plaintiff employee is injured in using a product designed and manufactured by his employer primarily for sale to the general public and only incidentally used in the defendant’s other activities. In between these extremes, the matter must be resolved on the facts of the particular case.”
 
 (Id.
 
 at p. 113, original italics.)
 

 Other similar cases holding that workers’ compensation was not an employee’s exclusive remedy against an employer are
 
 Moreno
 
 v.
 
 Leslie’s Pool Mart
 
 (1980) 110 Cal.App.3d 179 [167 Cal.Rptr. 747, 9 A.L.R.4th 869], where the plaintiff stockboy was injured while moving leaking, unlabeled bottles of muriatic acid and chlorine manufactured and packaged by his employer for sale and distribution to the consuming public, and
 
 Bell
 
 v.
 
 Industrial Vangas, Inc.
 
 (1981) 30 Cal.3d 268 [179 Cal.Rptr. 30, 637 P.2d 266], where the plaintiff route salesman was injured in a fire which occurred in the course of delivery of flammable gas to a customer’s premises.
 

 By contrast, in
 
 Shook
 
 v.
 
 Jacuzzi
 
 (1976) 59 Cal.App.3d 978 [129 Cal.Rptr. 496], and
 
 Bonus-Bilt, Inc.
 
 v.
 
 United Grocers, Ltd.
 
 (1982) 136 Cal.App.3d 429 [186 Cal.Rptr. 357], workers’ compensation was held to be the injured employee’s exclusive remedy.
 

 
 *38
 
 In
 
 Shook,
 
 the employee was injured while operating a machine designed and manufactured by his employer for its own use in its own plant. “International created the machine exclusively for its own use in its own plant and premises. It did not sell the machine or in any way place it in the stream of commerce. Rather, it was but an occasional or casual manufacturer, and thus not subject to strict liability [citations]. Its design and construction of this machine was but auxiliary to its principal manufacturing operation. As such, it does not subject International to products liability to its employees [citation].”
 
 (Shook
 
 v.
 
 Jacuzzi, supra,
 
 59 Cal.App.3d 978, 981.)
 

 In
 
 Bonus-Bilt,
 
 an employee of United Grocers was injured when a loaded cart used by United Grocers to deliver food from its frozen food warehouse to its retad customers fell from a truck being unloaded on United Grocers’ premises. The delivery carts had allegedly been modified by Bonus-Bilt, the manufacturer, at United Grocers’ request, and rendered defective. In opposition to United Grocers’ motion for summary judgment, Bonus-Bilt submitted evidence that when frozen foods were delivered by United Grocers to its retail customers, the carts were left with the customer for later pickup; some carts were not returned by the customer and had to be replaced. “But the activity in this case when contrasted with the
 
 [Gallo]
 
 decision’s criterion, ‘primarily for sale to the general public’ amounts to no more than unintended, inadvertent and incidental exposure of the cart to anyone other than the employer’s employees. There was not only no showing of sale or any other kind of offering of the carts to the consuming public, but the showing is by inescapable inference that United Grocers had an interest in recapturing and reusing such carts as reached their customers so as to reduce the cost of ordering new ones. . . . [f] Accordingly, we hold that on account of the employer’s statutory immunity an employer who merely accomplishes design changes in standard products as a purchaser from a manufacturer and designer or other producer not for the purpose of sale in the stream of commerce but exclusively for use in the employer’s business with only incidental or coincidental exposure of the product to members of the public is not engaged in such conduct primarily for sale to the general public and does not thereby occupy a status other than that of employer toward an employee injured in his employ on account of a defect in the product.”
 
 (Bonus-Bilt, Inc.
 
 v.
 
 United Grocers, Ltd., supra,
 
 136 Cal.App.3d 429, 439-440.)
 

 The essential difference between
 
 Gallo, Moreno
 
 and
 
 Bell,
 
 on the one hand, and
 
 Shook
 
 and
 
 Bonus-Bilt
 
 on the other, lies in whether the defect in question exposed members of the general public to danger as opposed to employees only. In
 
 Gallo,
 
 the defect exposed to danger any member of the general public who used the scaffolding, not just Gallo employees. Similarly, in
 
 Moreno,
 
 any retail distributor or customer handling the leaking, unlabeled bottles could have been exposed to the same danger as was the plaintiff employee. This was also true of
 
 *39
 
 the plaintiff employee in
 
 Bell.
 
 It was only coincidental in all three of the cases just noted that the person injured turned out also to be an employee of the employer-manufacturer.
 

 In contrast, in
 
 Shook
 
 and
 
 Bonus-Bilt,
 
 the defects exposed only employees of the manufacturer to danger, because the general public did not have access to the instrumentality which created the risk. It was no coincidence that the persons injured were employees of the manufacturer. In
 
 Bonus-Bilt,
 
 although the general public was occasionally exposed to the defective product, such exposure was inadvertent, and so again it was not coincidental that an employee was injured instead of a member of the general public.
 

 We turn now to application of the foregoing principles to the undisputed facts of the case before us. Do the facts present a case where the employee has been injured by a product which exposed the general public to danger, it being a mere coincidence that he was employed by the manufacturer, or did the risk which resulted in plaintiffs injury arise solely upon the occasion of his employment by defendant?
 

 To answer this question brings us directly back to the procedural posture in which the issue was presented to the trial court. The moving defendant had established his prima facie entitlement to judgment. To prevail, it was necessary that the plaintiffs filings in opposition raise a triable issue of
 
 material
 
 fact. Plaintiff attempted to do so by relying solely on a showing that beams of the same general size and design as the one which fell were manufactured and sold to third-party customers.
 

 At oral argument, counsel for plaintiff was asked on several occasions to define the risk to which his client had been exposed such as would invoke the dual capacity doctrine. His answer was that members of the public or employees of subcontractors on other jobs could be injured by beams such as the one which fell here. This was all very interesting, but it was sheer conjecture. The facts in opposition were limited to a showing that the horizontal beam which fell was not unique in that many others like it were supplied by defendant for inclusion in structures sold to customers. There was no effort to show that the same combination of beams, loads and stresses which caused his injuries appeared in other structures sold by defendant and posed the same risk of injury to members of the general public.
 

 Nevertheless, based upon this showing, plaintiffs counsel was adamant in assuming that the risk to the public had been established. We fail to see the logical or causal connection between plaintiffs showing and the risk to which he had been exposed such as would invoke the dual capacity doctrine. If the case were to go to trial, in order to establish a duty owed to plaintiff in terms of
 
 *40
 
 his being a member of the public exposed to a risk of harm, it would be necessary to put on evidence that the specific combination of beams, loads and stresses which constituted the alleged defect appeared in other structures sold by defendant to the public. It would also be necessary to show that the alleged defect posed a similar risk to members of the public, such as employees of subcontractors who regularly erect structures fabricated by defendant, or nonemployees who were regularly in places on construction sites where beams might fall on them.
 

 Even assuming that plaintiffs injuries were caused by a defective design in the oxygenator structure, it does not necessarily follow that other steel structures sold by defendant are similarly defective. It is undisputed that the steel components which defendant fabricates for the structures it sells are made to order. It is undisputed that “[n]o single connection method is appropriate for all situations.” Of compelling significance, there is nothing in the record which even remotely suggests that other structures sold to the public are similarly defective. Indeed, under the special order procedure under which all such beams are fabricated, the reasonable inference is that the defect was an isolated occurrence, confined to that particular oxygenator facility.
 

 In other words, the analysis employed by plaintiff does not go far enough to meet the factual situation presented by this record. This analysis assumes that sale of the
 
 product
 
 to the general public ipso facto imports a
 
 risk of harm
 
 to the general public. It assumes that the risk, like the product, is fungible, that the simple act of selling, of introducing the products into the stream of commerce automatically and uniformally exposes all who use it to the same risk. Such assumptions were warranted in the
 
 Gallo, Moreno
 
 and
 
 Bell
 
 cases, in which the products which injured employees were interchangeable with products sold to the public, but such assumptions are certainly not warranted here.
 

 As demonstrated by this record, cleaving the issue of dual capacity at the point of “sale to the public” does not parse the matter finely enough. Additional analysis is required. In cases of the hybrid nature here presented one must ask not only, “Does the defendant manufacture this product for sale to the public?” but in addition, “Is there a risk thereby created which is the same as the one to which the plaintiff was exposed?” Unless the question is answered in the affirmative, the dual capacity doctrine does not apply and the plaintiff employee is limited to recovery under his exclusive workers’ compensation law remedy.
 

 The utility of this approach we perceive as one going to the ultimate cause-finding process. The more precise yet flexible the court’s analysis, the greater the likelihood that the decision will accurately comport with the purpose and
 
 *41
 
 spirit of the workers’ compensation law, and thus achieve a just result from case to case. As Holmes said, the life of the law is experience.
 

 Viewed in the light of this more detailed analysis, our decision here is governed by the outcome in
 
 Shook
 
 and
 
 Bonus-Bilt,
 
 despite the fact that defendant manufactures beams for sale to the public. The cases noted are dispositive, for, in opposing the motion for summary judgment, plaintiff made no effort to show that any of the steel structures sold to the public contained the same alleged defect as the one which injured the plaintiff. In other words, as noted at the outset, whether or not the beam was “unique” begs the question. The key issue of fact was whether any of the structures fabricated by defendant and sold to the public were similarly defective, and plaintiff failed to show that any such structures were so flawed. Parenthetically, this statement of the key issue also assumes that plaintiffs injury was traceable to a defective product. It is our view that there was not even a showing of this fact in opposition to the motion for summary judgment.
 

 As a consequence, because the only special order structure even arguably shown to be defective was the one used by defendant in the erection of a facility for its own use on its own premises, the risk of harm to plaintiff arose only in connection with his employment. As stated in
 
 Bell
 
 v.
 
 Industrial Vangas, Inc.,
 
 supra, 30 Cal.3d 268, “If the duty flows solely from the employment relationship and the injury ‘arises out of and ‘during the course of that employment, then the . . . policy considerations behind the exclusive remedy in workers’ compensation mandating that the employer be immune from tort liability have viability.”
 
 (Id.
 
 atp. 277.)
 

 There being no triable issue of fact present in the record before it, the trial court properly granted the motion for summary judgment.
 

 Disposition
 

 The judgment is affirmed.
 

 Morris, P. J., and Rickies, J., concurred.
 

 A petition for a rehearing was denied June 9, 1983, and appellant’s petition for a hearing by the Supreme Court was denied July 27, 1983.