**JOHNS–MANVILLE SALES CORP., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. C–81–4561 RFP.**

United States District Court, N.D. California.

Aug. 21, 1985.

444

Clark J. Burnham, Moore, Clifford, Wolfe, Larson & Trutner Oakland, Cal., Dennis H. Markusson, Robert D. Batson, Johns-Manville Corp., Ken-Caryl Ranch, Denver, Colo., Harvey G. Sherzer, Howrey & Simon, Washington, D.C., Michael J. Rugen, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for plaintiff.

Nancy B. Collins, David S. Fishback, U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, D.C., for defendant.

## ORDER RE MOTION TO DISMISS

PECKHAM, Chief Judge.

### INTRODUCTION:

Johns-Manville Sales Corp. ("J–M") filed this action against the United States on December 7, 1981, to recover equitable indemnity, in whole or in part, from the United States, in the amount Johns-Manville paid to settle a claim with John C. Robinson.[1] Robinson was a federal employee allegedly injured by exposure to asbestos-containing products J–M manufactured while working at Long Beach and Mare Island Naval Shipyards in California. Robinson was employed in these shipyards from 1965 to 1980. J–M settled that case for $45,000 in October of 1981.

---

1. In February of 1983, the court dismissed the first three causes of action of J–M's 1981 complaint, on the grounds that the court had no subject matter jurisdiction because J–M had failed to file for administrative relief under the Federal Tort Claims Act, 28 U.S.C. § 2675. The court retained jurisdiction over J–M's fifth amendment claim because it involved no administrative claim requirement. On January 9, 1984, the court granted J–M's request to file its first amended complaint because the court found that J–M had satisfied its duty to bring an administrative claim.

At that time, the court also rejected the government's argument that the exclusive remedy provision of the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8116(c), barred J–M's first four claims. The court found that the 1983 Supreme Court decision in *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1993), effectively answered the defendant's argument.

J–M asserts four claims in its first amended complaint.[2] These claims fall into two categories: 1) claims that the United States breached a duty it owed directly to Johns-Manville, and 2) a claim for partial equitable indemnity[3] because the government, as employer and vessel owner, was negligent towards John Robinson.

The government has moved to dismiss claims one through four on the grounds that these counts fail to state a claim upon which relief can be granted, and that this court does not have subject matter jurisdiction. For the reasons set forth below, the court denies the defendant's motion to dismiss claims one, two, and three, because J–M alleges that it was forced, under threat of civil and criminal penalties, to supply asbestos to the government. As discussed below, however, it is not clearly stated how asbestos J–M supplied during World War II caused Robinson harm. With regard to the causal element, the court treats the defendant's motion to dismiss as a motion for more definite statement and grants J–M thirty days to amend its complaint to state facts to show the causal link between defendant's behavior and Robinson's injury for counts one, two, and three.

The court also denies the defendant's motion to dismiss the fourth claim, preserving it to the extent that it rests on a theory of the defendant's liability to John Robinson as vessel owner.

LEGAL ANALYSIS:

The legal analysis in this case is complex and depends upon a careful understanding of the relationship between the doctrines of waiver of sovereign immunity and state laws providing for liability and indemnification. The court first sets forth an overview of its analysis of the welter of laws and legal principles discussed by the parties in voluminous briefs.

Johns-Manville is suing the government under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), and 2671, *et seq.* Section 1346(b) of Title 28 provides jurisdiction for federal courts over suits against the United States where the "United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

▆▆▆ Under the FTCA, the liability of the government depends on whether a private person[4] in like circumstances would

---

**2.** In its first amended complaint, J–M originally included a count alleging a fifth amendment taking violation and a count asserting admiralty jurisdiction. In its reponse to the defendant's motion to dismiss, J–M has dropped its claims based on these two theories.

**3.** Claim four of the first amended complaint originally also contained a claim for contribution. Contribution in California is a statutory right, and may only be had when a "money judgment has been rendered jointly against two or more defendants in a tort action." Cal.Code Civ.Pro. § 875. The government says that no money judgment has been rendered against J–M and the United States in Robinson's action, and therefore J–M is not entitled to contribution.

J–M has conceded the accuracy of the government's interpretation of California contribution law and drops its claim for contribution. Plaintiff's Opposition, filed 7/30/84 at 46.

**4.** Note that this analysis makes state law regarding the liability of municipalities irrelevant to this case. The Supreme Court has said that federal law governs the scope of the federal government's immunity, therefore any state law

on municipal and state government immunity does not apply to suits under the FTCA. *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963) (FTCA allowed suit by federal prisoner who alleged negligence by federal prision officials in Indiana, even though state law may bar such suits by state prisoners).

In other words, the court must apply the state law applicable as if the federal government were a private person acting in that state. *See e.g., Indian Towing Co. v. United States,* 350 U.S. 61, 65, 76 S.Ct. 122, 124, 100 L.Ed. 48 (1955) (United States could be liable for negligent operation of lighthouse. Court rejected the reading of "the statute [FTCA] as imposing liability in the same manner as if it [the government] were a municipal corporation and not as if it were a private person."); *Wright v. United States,* 719 F.2d 1032, 1043 (9th Cir.1983) (plaintiff could sue IRS agent for malicious prosecution under the FTCA even though California law provided California government agents immunity from malicious prosecution action; court said equating the United States to that of a state municipal corporation under state law would be erroneous); *Guy v. United States,* 492 F.Supp. 571, 571–72 (N.D.Cal.1980) (federal prisoner allowed

be liable under the state law applicable where the act or omission occurred. *United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 1853, 10 L.Ed.2d 805 (1963); *Poindexter v. United States,* 752 F.2d 1317 (9th Cir.1983); *Wright v. United States,* 719 F.2d 1032, 1034 (9th Cir.1983) ("The elements of a cause of action under the FTCA are determined by state law."); *Rudelson v. United States,* 602 F.2d 1326, 1332–33 (9th Cir.1979). Thus, the court must ask whether, under the applicable state law, the plaintiff has stated facts which, if the government was a private person, would support liability.[5]

J–M asserts two types of claims against the government: claims based on the government's breaches of tort duties it allegedly owed directly to J–M, and a claim for equiable indemnity. Under a rule 12(b)(6) motion, the court will not dismiss a claim unless it appears that the plaintiff can prove no facts that support a claim for relief. *Church of Scientology of California v. Flynn,* 744 F.2d 694, 696 (9th Cir. 1984). With the admonition in mind that a court should be reluctant to use rule 12(b)(6) to eliminate novel legal theories, *Sherman v. St. Barnabas Hospital,* 535 F.Supp. 564, 572 (S.D.N.Y.1982), the court evaluates each of J–M's claims. The court starts first with J–M's claims that the government breached duties owed directly to J–M.

*Claims One through Three:*

J–M argues that, in its first three claims, it alleges breaches of duties that the United States owed directly to J–M; that J–M is not suing derivatively for breaches of duties running solely to Robinson. Therefore, J–M argues, any workmen's compensation law, either the Longshoremen and Harbor Workers' Compensation Act or California workmen's compensation law, is inapplicable to this case. The only applicable law is general tort law of California.

In Claim One, J–M alleges that the government had a duty to "investigate, evaluate, report, and disclose the potential risks associated with installation or removal of asbestos-containing materials in the Navy shipyards," J–M's First Amended Complaint, ¶ 53, and that the failure of the government to carry out this duty caused the injuries allegedly sustained by Robinson. J–M thus maintains that it is "entitled to receive from the United States any damages sustained by Johns-Manville in connection with the *Robinson* case." *Id.* at ¶ 54.

In Claim Two, J–M claims that the government had exclusive control over the asbestos product specifications and knowledge, superior to J–M's, of the risks involved for workers using asbestos. This exclusive control and superior knowledge gave rise to an implied tort duty to indemnify J–M for any damages that resulted

to sue prison officer for negligence even though California state law would provide immunity for state officials on those facts). The court rejects J–M's argument that these cases govern the court's consideration of the government's liability here. *See* Plaintiff's Memorandum in Opposition, filed 7/30/84 at 25.

5. J–M takes conflicting positions on which state laws are applicable to the government in this case. At one point, in discussing California's conflict of interest laws, J–M argues that the government's negligent acts or omissions occurred in Washington, D.C., where governmental decision were being made. Plaintiff's Opposition, filed 7/30/84 at 44. This reasoning might lead the court to find that the appropriate state law is the law of the District of Columbia. J–M also strenuously argues that this court should apply the general tort law of California in evaluating its claims. *See e.g.,* Plaintiff's Sup-

plemental Memorandum, filed 10/1/84 at 48–52 (court should apply California's Good Samaritan law). Moreover, J–M argues that the court should apply California's conflict of law rules in reaching a decision to apply federal maritime law. Plaintiff's Opposition at 44; Plaintiff's Supplemental Memorandum at 24.

Under the FTCA, the court must decide "where the negligent act or omission occurred and not where the negligence had its 'operative effect' (i.e. the situs of the injury.)" *Roberts v. United States,* 498 F.2d 520, 522 n. 2 (9th Cir. 1974). Bad acts or omissions on the part of the government may have occurred all over the United States, but J–M is complaining here about the alleged actions occurring at two naval bases in California where the government's alleged failure to warn and supervise John Robinson was the proximate cause of the harm J–M suffered in this case. The court, therefore, looks to and applies California law.

from J–M's compliance with these government specifications. J–M alleges that the money it paid out to Robinson in settlement is included within these damages that the government had a duty to indemnify.

Finally, in Claim Three, J–M alleges that the government impliedly warrented that it would use the asbestos-containing materials in its shipyards in a "safe manner designed to prevent exposure to excessive concentrations of asbestos, and in a manner designed to conform with recognized and Government adopted standards and safe work practices." *Id.* ¶ 61.

The government also allegedly warranted that it would indemnify J–M for any claims it paid to workers such as Robinson, who were allegedly injured as a result of the government's negligent utilization of the asbestos materials. J–M alleges that the government committed tortious ("negligent") breaches of these warranties, and that J–M is entitled to full indemnity of the amount it paid to Robinson. *Id.* at ¶ 63.

In support of these claims, J–M points to a number of facts which, under this motion, the court must take as true. *Church of Scientology of California v. Flynn,* 744 F.2d 694, 696 (9th Cir.1984). First, J–M alleges that, during World War II and in the years thereafter, it was required by law to enter into contracts for the supply of asbestos-containing materials for use in the construction, conversion, or repair of Navy vessels. First Amended Complaint at ¶¶ 12, 13. Second, J–M alleges that the government participated in the design and specification of these materials. *Id.* at

¶ 13. Third, J–M alleges that the government established its own standards based on superior knowledge of the health hazards of asbestos, for the safe use of asbestos. *Id.* at ¶¶ 14–21. But, the government allegedly failed to enforce its own safety standards. *Id.* at ¶ 22. And fourth, J–M alleges that tte government had exclusive control over working conditions in the navy shipyards and at times (particularly during 1964–66) blocked J–M's efforts to present its asbestos-related safety programs to employees of government shipyards. *Id.* at ¶¶ 22–50.

The court analyzes J–M's claims under California tort law,[6] and finds that J–M's allegations do support a cause of action that sounds in tort. J–M must prove that the government forced J–M, under the threat of civil and criminal sanctions, to supply asbestos that conformed to government specifications, and that the government had knowledge, superior to that of J–M's that asbestos was harmful to the safety of its workers. Furthermore, J–M must show that the government failed to implement safety procedures to protect its workers.

While no California tort principles neatly fit the facts alleged in this case, the court looks to California law to impose upon the government a duty to act with reasonable care towards J–M. The court relies on analogies from the California law of special relationships to find legal support for J–M's claims in counts one through three. The court concludes that the defendant cre-

---

6. This is the analysis the district court in Maine used when confronted with the claims by a group of asbestos manufacturers, defendants in suits by various persons who worked with asbestos, against the United States for a series of alleged breaches of duties the government owed the manufacturers. The district court in Maine evaluated the manufacturers' claims against the government under Maine tort law, and dismissed most of the manufacturers' claims for failure to state claims. *In Re All Maine Asbestos Litigation,* 581 F.Supp. 963 (D.Me.1984).

In the *All Maine Asbestos Litigation,* case, the court said that the asbestos manufacturers had stated a cause of action against the government on a Good Samaritan theory. The manufactur-

ers sought indemnity for claims by government shipyard workers on the theory that, "by undertaking to conduct studies, surveys and experiments designed to protect the health and safety of asbestos workers, who relied on the United States' actions to their detriment, the United States assumed a duty to provide warnings and otherwise exercise reasonable care to proect those workers." *All Maine Asbestos Litigation, supra,* 581 F.Supp. at 977–78.

The court went on to hold that summary judgment against the manufacturers on this count was warranted, because there was no evidence that the workers were aware or ever relied on any health and safety surveys or studies the government was doing. *Id.* at 978–79.

ated a special relationship with J–M when it allegedly required J–M, under penalty of law, to supply products the defendant knew to be dangerous to its workers.

"[T]he common law, reluctant to impose liability for nonfeasance, generally does not impose a duty upon a defendant to control the conduct of another ... [citations omitted], unless the defendant stands in some *special relationship* either to the person whose conduct needs to be controlled or to the foreseeable victim of such conduct." *Johnson v. County of Los Angeles,* 143 Cal.App.3d 298, 191 Cal.Rptr. 704 (1983). In *Johnson,* the County Sheriff arrested the decedent for driving on the wrong side of the freeway in an attempt to commit suicide. Shortly after the arrest, plaintiff, the decedent's wife, informed the defendants that the decedent was a paranoid schizophrenic who had suicidal tendancies and required immediate care. She also told defendants that the decedent should not be released. The defendants assured plaintiff that they would hospitalize decedent and that she should not worry. *Id.* at 304, 191 Cal.Rptr. at 707. The defendants, however, released the decedent without informing the plaintiff, and two days later he committed suicide. The court in *Johnson* concluded that "Sheriffs here stood in a special relationship to Decedent and to Appellants, and had a duty to warn Appellants before releasing Decedent." *Id.*

In order to establish this special relationship, J–M must establish, at a minimum, the foreseeability of the harm. *Johnson v. County of Los Angeles, supra,* 143 Cal. App.3d at 308, 191 Cal.Rptr. at 710 (1983). Here, J–M has alleged facts that would show foreseeability, if the government knew of the harms associated with asbestos, knew that it could take safety precautions to avoid the harm, and knew that Robinson could sue J–M for harm done to him by the asbestos.

That J–M was a reasonably foreseeable victim is not alone sufficient to establish the special relationship. *Davidson v. City of Westminster,* 32 Cal.3d 197, 209, 649 P.2d 894, 898, 185 Cal.Rptr. 252, 258 (1982). In *Davidson,* the California Supreme Court held that the police had no duty to warn a husband and wife in a laundromat of the presence of a person the police suspected of previous stabbings, even though the police had this suspect under surveillance in the laundromat with the couple. *Id.* at 210, 649 P.2d at 900, 185 Cal.Rptr. at 258. The suspect eventually stabbed the wife, but the court said it would not impose a duty to warn on the police, even though the wife was a reasonably foreseeable victim, because the police had not placed the wife in danger and the couple did not rely on the protection of the police when they went into the laundromat.

The Court explained, "a finding of special relationship does not require a promise or reliance thereon in order to impose a duty of care." *Id.* at 207, 649 P.2d at 899, 185 Cal.Rptr. at 257. But, in order to impose a duty to protect, the defendant must either place the plaintiff in danger or act in such a way so that the plaintiff becomes dependant upon the defendant. *Id.* at 208, 649 P.2d at 900, 185 Cal.Rptr. at 258.

Here, J–M has alleged that, by forcing it to supply asbestos, the government had a duty to J–M to see that it would not suffer injury from a danger that the government created. J–M was clearly dependant upon the government because it was compelled to supply asbestos to the government for ships upon which Robinson was eventually to work.

The court recognizes that the special relationship doctrine does not fit the typical manufacturer-supplier relationship because the parties in the typical situation consent to deal with each other and presumably can negotiate contractual provisions to protect themselves.[7] Hence, the parties do not

---

**7.** *Cf., Santisteven v. Dow Chemical Company,* 506 F.2d 1216, 1219 (9th Cir.1974). In this case, a copper company employee, who was seriously injured while using flake caustic soda, brought a

personal injury action against the supplier of the chemical. The supplier then filed suit against the copper company claiming that the copper company had a duty to the supplier to

need the protection of tort law, that imposes duties of reasonableness upon people whether they agree explicitly to such restraints or not. Rather, to the extent that the government required J–M to supply asbestos, J–M was not like an ordinary supplier who sold his products voluntarily to the buyer and who could freely negotiate contract terms. The facts alleged in the case at bar are analogous to the case in which one side in a contractual relationship has oppressive bargaining power, and uses this power unfairly in the bargaining process or to obtain unconscionable terms in the contract. In such situations, the California legislature directs the courts to refuse to enforce unconscionable contract terms. Cal.Civil Code § 1670.5 (codifying the Uniform Commercial Code's unconscionability section 2–302, and applying it to all contracts, not just sale of goods contracts). The doctrine represents the public policy against oppressive contractual relationships.

J–M's Third Claim is also based on tort duties that arise from an implied-in-fact contractual relationship. J–M alleges that the facts of the government's participation in the design and specification of the asbestos-containing products, its representations as to the safe use of the products, its failure to allow J–M to present certain safety programs at the naval bases, and the assurances that the government was handling safety matters adequately, all support a claim of implied contractual indemnity. In other words, J–M could have interpreted this government activity as a signal that the government was assuming responsibility for worker safety, that J–M was relieved from further duty relating to safety, and that the government would indemnify J–M for any damage caused by the government's failures in providing for its workers' safety.

Under California law, an obligation to indemnify may arise from either of two general sources: "First, it may arise by virtue of express contractual language establishing a duty in one party to save another harmless upon the occurrence of specified circumstances. Second, it may find its source in equitable considerations brought into play either by contractual language not specifically dealing with indemnification or by the equities of the particular case." *E.L. White, Inc. v. City of Huntington Beach*, 21 Cal.3d 497, 506–07, 579 P.2d 505, 510, 146 Cal.Rptr. 614, 619 (1978); *Rossmoor Sanitation Inc. v. Pylon Inc.*, 13 Cal.3d 622, 628, 532 P.2d 97, 100, 119 Cal.Rptr. 449, 452 (1975).

■ Defendant argues in its Reply Memorandum that, to the extent J–M's Claims One, Two, and Three are based on a contractual theory, J–M has not alleged proper jurisdiction in its First Amended Complaint. Government's Reply, at pp. 23, 25, 26. Specifically, defendant argues that an action based on a contract must be brought under the Tucker Act, 28 U.S.C. § 1346(a)(2) and § 1491. Defendant maintains that as J–M does not allege Tucker Act jurisdiction, J–M's claims must be dismissed. This argument, however, misunderstands J–M's theory. J–M alleges that a tort duty resulted from the relationship of the parties. California courts have long recognized that a "wrongful act committed in the course of a contractual relationship may afford both tort and contractual relief, and in such circumstances the existence of the contractual relationship will not bar the injured party from pursuing redress in tort." *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 174–75, 610 P.2d 1330, 1334, 164 Cal.Rptr. 839, 843 (1980). It is well-established law in California "that if the cause of action arises from a breach of promise set forth in the contract, the action is ex contractu, but if it arises form a breach of duty growing out of the contract, it is ex delicto." *Id.,*

avoid subjecting the supplier to tort liability. In rejecting this theory, the Ninth Circuit held simply that "indemnity does not work in this way." *Id.* The court stated that "in the absence of a specific legal relationship (e.g. master-servant)

or contract-type obligation, indemnity is tirggered not by "an abstract duty owed a third party" but only when it is more just to shift the burden of loss. *Id.*

quoting *Eads v. Marks,* 39 Cal.2d 807, 811, 249 P.2d 257, 260 (1952).

The purpose of imposing tort duties upon contracting parties is to implement fundamental public policy. *Tameny v. Atlantic Richfield Co., supra* at 176, 610 P.2d at 1335, 164 Cal.Rptr. at 174–75. In *Tameny,* the California Supreme Court recognzied the policy of protecting employees who refuse to obey employer's instructions to violate the law. The court held that an employer who threatens to or discharges an employee for refusing to violate anti-trust laws, wrongfully encourages an employee to violate his duty to obey the law. Thus, an employee who is fired for refusing to violate anti-trust laws may maintain a tort action for wrongful discharge and is not limited to suing for breach of contract. *Id.* at 178, 610 P.2d at 1337, 164 Cal.Rptr. at 846.

While California courts have never recognized such a duty in a buyer-seller relationship, J–M did not have a typical buyer-seller relationship with the government. The fundamental public policy in this case is represented in the policy against unconscionability in contractual relationships. As stated above, the California legislature has extended the U.C.C.'s unconscionability doctrine to all contracts. And prior to the enactment of Cal.Civil Code § 1670.5 in 1979, "[u]nconscionability ha[d] long been recognized as a common law doctrine which [was] consistently applied by California courts in the absence of specific statutory authorization." *A & M Produce Co. v. FMC Corp.,* 135 Cal.App.3d 473, 484, 186 Cal.Rptr. 114, 121 (1982). Thus, the facts J–M alleges support a cause of action under this tortious breach of an implied contractual provision also.

The duty on the part of the government that the court finds here is limited to injury J–M suffered by way of lawsuits caused by asbestos J–M was forced by law to supply to the government, not from asbestos J–M voluntarily contracted to supply. It appears, however, that Robinson was not working during the time J–M had a mandatory obligation to provide asbestos. But,

counsel for J–M suggested at oral argument that Robinson worked to refit ships and remove asbestos that had been installed the time J–M was under legal obligation to supply asbestos. The court will treat defendant's motion to dismiss as a motion for more definite statement as to the causal element in counts one through three. *See Burkhead v. Phillips Petroleum Co.,* 308 F.Supp. 120, 123–24 (N.D.Cal.1970). The court grants J–M thirty days to amend its pleading to alleged explicitly this fact of causation.

■ To the extent that J–M alleges harm caused by asbestos it supplied as part of a contractual relationship entered into freely, the court finds J–M does not state a cause of action that sounds in tort. The concerns the court has about the element of coersion are not present when J–M chooses to enter into contracts to sell asbestos to the government, especially after 1964, when by J–M's own pleading, it realized the dangers of asbestos. J–M's first amended complaint ¶ 49. Rather, J–M is left with its claim for equitable indemnity, as set forth below.

*Claim Four: Equitable indemnity:*

J–M's fourth claim seeks equitable indemnity from the government for its alleged negligence towards Robinson on two grounds. First, J–M argues that the government breached a duty of care to Robinson, as Robinson's employer, and therefore J–M is entitled to partial equitable indemnification for the portion of the government's fault. J–M also contends that the government breached a duty of care it owed to Robinson in its role as the owner of the vessels upon which Robinson worked.

The court begins it discussion of third-party suits against the United States with the 1983 Supreme Court decision of *Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983). In *Lockheed,* the Supreme Court rejected the argument that the exclusivity provision of the Federal Employee Compensation Act (FECA) barred third party in-

demnity suits against the United States. The FECA prohibits "actions against the United States by an employee, his legal representatives, spouse, dependents, next of kin, [or] any other person otherwise entitled to recover damages from the United States ... because of the [employee's] injury or death." 5 U.S.C. § 8116(c).

In *Lockheed*, the Lockheed Aircraft Corporation sought indemnity from the United States for a settlement Lockheed had reached with a federal employee who was injured in a Lockheed airplane. The Court reviewed the language of the FECA exclusivity provision, the legislative history, and public policy underlying the FECA. The Court found that the *quid pro quo* present in the FECA, and all worker compensation legislation—in which employees are guaranteed immediate fixed benefits in return for the right to sue the government—did not operate to bar third parties from suing the government. Under the FECA, these third parties received no *quid pro quo* in exchange for giving up the right to sue the government. *Id.* at 198, 103 S.Ct. at 1038.

It is important, however, to remember that *Lockheed* does not confer upon a third party a right to sue, rather the Supreme Court just said that the FECA does not present a bar to third-party suits. *Id.* As the Court explained, the issue of the substantive law of indemnity was not before the Court. *Id.* at 197, n. 8, 103 S.Ct. at 1037. Thus, the plaintiff must affirmatively establish that it has a valid theory for indemnification.

To establish affirmatively its claim, the FTCA requires J–M to show that a private person in similar circumstances would be liable to J–M. The California Supreme Court, in *American Motorcycle Association v. Superior Court of Los Angeles*, 20 Cal.3d 578, 591, 578 P.2d 899, 907, 146 Cal.Rptr. 182, 190 (1978), held that California's equitable indemnity law is to be based on a comparative negligence concept. The

co-defendant tortfeasors remain jointly and severally liable to the plaintiff, but may apportion damages among themselves on a percentage fault basis. Of course, J–M may obtain equitable indemnity from the government only if J–M can show that the government could have been liable to Robinson.

It is clear that the government, as a private employer in the state of California or under the Longshoremen and Harbor Workers' Compensation Act, ordinarily would not be liable to Robinson in a tort action. He is limited to recovering workmen's compensation. 33 U.S.C. § 905(a); Cal.Labor Code § 3864. J–M has two theories, however, on which to argue that the government, as a private employer in California, could be held liable to Robinson. The court examines each of J–M's arguments in turn.

*1. Government as a vessel owner:*

 Both parties agree that, if the government were a private employer in this case, the Longshoremen and Harbor Workers' Compensation Act (LHWCA) would apply.[8] The Supreme Court has said that, if the employer also owns the vessel on which the employee is injured, the LHWCA allows the employee to sue the employer in negligence, not in his capacity as employer, but as the vessel owner. *Jones & Lauglin v. Pfiefer*, 462 U.S. 523, 532, 103 S.Ct. 2541, 2548, 76 L.Ed.2d 768 (1983). The Court allowed this action because § 905(b) of the LHWCA preserves the employee's right to sue a vessel owner for negligence. The Court reasoned that the employer, as vessel owner, should not escape the effect of this statutory provision merely because it also happens to be the employer. *Id.*

Treating the government as a private employer under the LHWCA, Robinson could have sued the government-employer under a negligence theory. In turn, this

---

**8.** Both parties agree that the LHWCA would apply if the court treated the government as a private shipyard employer in California. Government's Memorandum in Suppoert, filed 5/14/184 at 8. Plaintiff's Memorandum in Support, filed 7/30/84 at 30. The LHWCA covers "any harborworker including a ship repairman, shipbuilder, ..." 33 U.S.C. § 902(3). Robinson worked as an insulator in ships in dry dock.

underlying liability allows J–M to sue the government for equitable indemnity, unless some other bar to J–M's recovery exists. The government asserts two potential bars to J–M's recovery. First, the government argues that § 905(a) of the LHWCA is an exclusivity provision that absolutely bars J–M's third-party suit. Section 905(a) provides that, "[t]he liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death."

The LHWCA's exclusivity provision is virtually identical to the exclusivity provision of the FECA that was the subject of the *Lockheed* decision. As the government did in *Lockheed* with regard to the FECA, the government argues here that this exclusive remedy provision bars J–M's third party suit. The government attempts to distinguish *Lockheed* by saying that in this case, the legislative history of the 1972 LHWCA amendments, of which § 905(a) was one, shows that Congress intended to bar third-party indemnity suits.

The court reads the legislative history differently. The legislative history reveals that Congress inteded to bar *vessel owners* from being indemnified from stevedore-employers for money damages that the vessel owners paid out to the longshoremen-employees injured by the vessel owner's negligence. In return, however, Congress shielded the *vessel owners* from suits by longshoremen on a seaworthiness strict liability doctrine. That is, longshoremen can only sue the vessel owners on a negligence theory, though prior to 1972, the Supreme Court had said they could sue vessel owners on a seaworthiness theory. *Sees Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

It is clear from the legislative history of the 1972 amendments that Congress was concerned with balancing the duties and liabilities among these three specific parties. The legislative history does not show that Congress had other third parties in mind when it was considering barring suits for indemnity against the stevedore-employer.

Apparently, the only court to have considered whether the LHWCA bars indemnity suits by third parties other than vessel owners, decided that the *Lockheed* decision provides that the indemnity action is not barred. *Austin v. Johns-Manville Sales Corp.*, Civil. No. 78–122 P, bench ruling (March 9, 1984). The court in *Austin* had originally ruled that the LHWCA did bar manufacturers' indemnity suits against employers, 508 F.Supp. 313 (D.Me.1981), but reversed itself in light of *Lockheed*.

In *Lockheed*, the Supreme Court commented on the LHWCA, by way of contrast with the FECA, and noted that Congress abolished the third-party indemnity action only in conjunction with a *quid pro quo* to benefit the third party. The only third party that benefits under the LHWCA, however, is the vessel owner. A manufacturer, such as J–M, may still be liable to an employee on a strict liability theory. In fact, Robinson's complaint, attached as Exhibit B to Plaintiff's Memorandum in Opposition, filed 7/30/84, pleads a claim that sounds in strict products liability. (Robinson's third cause of action). In *Lockheed*, the fact that Congress had provided no *quid pro quo* in the FECA compensation scheme for the third party was grounds for the Court to refuse to bar the third party's claim against the United States. The same result is warranted here.[9]

The government also argues that the exclusivity provision of the California workemen's compensation act bars J–M's recovery in this case. Under California law, if

---

**9.** The government points to a recent amendment to § 905(b) of the LHWCA that prohibits the employee from suing the vessel owner who is an employer on a negligence theory. The fact that Congress passed this amendment, to over-

rule *Jones & Laughlin*, serves to show that Congress reocgnized that the court's interpretation of the LHWCA, in effect during the time relevant to this case, is correct.

an employee is injured in the scope of his employement, Labor Code § 3864 "normally precludes a third party tortfeasor from obtaining indemnification from the employer, even if the employer's negligence was a concurrent cause of the injury." *American Motorcycle Association v. Superior Court*, 20 Cal.3d 578, 607 n. 9, 578 P.2d 899, 917–18 n. 9, 146 Cal.Rptr. 182, 200, n. 9 (1978); *E.B. Willis Co., Inc. v. Superior Court of Merced County*, 56 Cal.App.3d 650, 654, 128 Cal.Rptr. 541, 542 (1976) (under Labor Code § 3864, employer only required to indemnify a third party if there is an express indemnification agreement).

The answer to the government's argument on California workmen's compensation law turns on an analysis of J–M's claim that California workmen's compensation law would allow Robinson to sue an employer covered under such law. The court considers J–M's argument below.

### 2. Government as a co-manufacturer:

█ J–M alleges that the government could be held liable to Robinson based on California's "dual capacity doctrine." [10] *See* Plaintiff's Supplemental Memorandum, filed 10/1/84 at 35–39. This doctrine allows the employee to sue an employer whose acts, done in a legal capacity other than as employer, cause injury to the employee. *Shields v. County of San Diego*, 155 Cal.App.3d 103, 109, 202 Cal.Rptr. 30, 34 (1984). As applied to an employer-manufacturer, it affords an injured employee, statutorily entitled to a workmen's compensation award, a separate remedy against the employer when the injury results from an act or omission of an employer and is inflicted in a relationship distinct from that of employer-employee. Thus, an employer whose employee is injured when using a defective device manufactured by an employer, is liable for breaching a duty toward the employee that differs from the duty created by the employer-employee status. *Id.; Bell v. Industrial Vagas, Inc.*, 30 Cal.3d 268, 282, 673 P.2d 266, 273, 179

Cal.Rptr. 30, 39 (1981); *Franco v. United Wholesale Lumber Co.*, 148 Cal.App.3d 981, 983, 196 Cal.Rptr. 430, 431 (1984).

In applying the dual capacity doctrine to an employer-manfacturer, the courts focus on "whether the manufacturer sells the defective product to the general public." *Nicewarner v. Kaiser Steel Corp.*, 143 Cal. App.3d 31, 37, 191 Cal.Rptr. 522, 525–26 (1983). In *Nicewarner*, a plaintiff-employee, acting within the course and scope of his employment, was injured when an improperly connected steel beam fell fifteen feet to the ground. The steel beam was specifically fabricated by the products division of the employer, Kaiser Steel Corporation, and the plaintiff alleged the beam was "not unique in that it was generally of a size and design regularly fabricated by [Kaiser] and stockpiled for sale to the public." *Id.* at 34, 191 Cal.Rptr. at 524.

The court explained that the dual capacity exception only applies if the plaintiff can show that: 1) the defendant does manufacture the product for sale to the public, and 2) the risk thereby created is the same as the one which the plaintiff was exposed. *Id.* at 40, 191 Cal.Rptr. at 522. The plaintiff in *Nicewarner* failed because he could not show that the risk of injury that befell him, from the improper connection, was one that the public faces when using the steel beam.

J–M's allegations that the United States was liable to Robinson under the dual capacity doctrine cannot pass the *Nicewarner* analysis. While the United States allegedly aided in the design and arguable the manufacture of the asbestos-containing products, J–M does not allege that the United States ever sold these products to the general public at either the wholesale or retail level. It is only through the manufacture and sale of the asbestos-containing products that the United States could be exposed to liability under the dual capac-

10. The California legislature eliminated the employee's right to pursue actions under the dual capacity doctrine, by amending the Labor Code s 3602. This section did not go into effect until January 1, 1983, and does not affect cases that arose before that date. *Franco v. United Wholesale Lumber Co.*, 148 Cal.App.3d 981, 983 n. 1, 196 Cal.Rptr. 430, 431 n. 1. (1984).

ity doctrine. The court, then, must grant the United States' motion to dismiss claim four to the extent that it is based on the government's liability to Robinson in its capacity as manufacturer.[11]

CONCLUSION:

For the foregoing reasons, the court hereby:

1. DENIES the defendant's motion to dismiss claims one, two, and three, to the extent that J–M alleges that it was forced, under threat of civil and criminal penalties, to supply asbestos to the government,

2. GRANTS the plaintiff 30 days to amend its complaint to allege explicitly facts to show how the asbestos J–M was forced to supply to the government caused harm to Robinson,

3. GRANTS the defendant's motion to dismiss claim one, two, and three, to the extent that these claims rest on sales of asbestos J–M made to the government voluntarily, and

4. DENIES the defendant's motion to dismiss claim four to the extent it claims indemnity for the government's liability to Robinson in its capacity as vessel owner.

IT IS SO ORDERED.

---

[11]. In the case of *In Re All Maine Asbestos Litigation,* 589 F.Supp. 1571 (D.Me.1984), the court did not dismiss a claim by the asbestos manufacturers that is very similar to J–M's claim here. In Maine, the defendant asbestos manufacturer sought indemnity from the government for its negligence towards employees in its capacity as vessel owner. *Id.* at 1575. The district Court in Maine did not dismiss the claim because it was not clear whether the Maine courts would accept a dual capacity theory. *Id.* at 1576. The court said it would consider a motion for certificaiton to the Maine Supreme Court.

Unlike Maine law, however, the California courts have defined and discussed the dual capacity doctrine, and it is clear that, if presented with the allegations in this case, the California courts would not allow Robinson to sue his employer as a co-manufacturer.